United States District Court Northern District of California

Rhawn Joseph, Ph.D. pro se

408-286-9833

677 Elm St. San Jose, CA 95126

RhawnJoseph@Gmail.com

----------------------------------------------}

Rhawn Joseph, Ph.D.                          }

Plaintiff                                           }

                                                       }

v                                                      }

                                                       }

National Aeronautics and Space          }

Space Administration (NASA),             }

Charles F. Bolden NASA Chief           }

Administrator, NASA's Paul Hertz,     }

David Morrison, Rocco Mancinelli,     }

John Callas, Steven Squyres, and        }

Does 1-100,                                       }

Defendants                                         }

_____}

Case Number: CV 14-00385

Honorable Ronald M. Whyte, U.S. District Judge

PLAINTIFF'S SECOND AMENDED COMPLAINT:
VIOLATIONS OF PLAINTIFF'S FIRST AND
FOURTEENTH AMENDMENT RIGHTS, CHILLING
AND PRIOR RESTRAINT OF SPEECH AND PRESS,
DEFAMATION, SLANDER, TRADE LIBEL,
CENSORSHIP, PRAYER FOR INJUNCTIVE AND
DECLARATORY RELIEF

Demand for Jury Trial

Second Amended Complaint Filed on: May 22, 2014

James A. Scharf, Defendants' Attorney
Assistant United States Attorney
United States Attorneys Office
150 Almaden Blvd, Suite 900
San Jose, CA 95113

## I. FIRST AND FOURTEENTH AMENDMENT VIOLATIONS -STANDING, CAUSE, DUE PROCESS

1.      Liberty and freedom of speech and the press must be zealously guarded, protected and vigorously defended against those in government who believe they have the right to take them away, for attacks on these constitutional freedoms and the "marketplace of ideas" by government agencies are

legion despite the guarantees enshrouded in the 1st and 14th amendment (Healy v. James, 408 U.S. 169, 180 (1972); Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 835 (1995); Tinker v. DesMoines Indpt. Comm. Sch. Dist., 393 U.S. 503, 506, 511 (1969); Widmar v. Vincent, 454 U.S. 263, 267 n.5 (1981); Papish v. Board of Curators of Univ. of Mo., 410 U.S. 667 (1973); Jews for Jesus, Inc. v. City Coll. of San Francisco, No. C 08-03876 MHP, 2009 WL 86703, at *3 (N.D. Cal. Jan. 12, 2009).

2.     Defendant NASA is no different and has waged a 50 year terrorist campaign of slander, defamation, libel, threats, and harassment to chill speech, silence the scientific community and to destroy the reputation of any scientist and any scientific journal, including this Plaintiff and the Journal of Cosmology (JOC), which  dares to question or provides evidence refuting or challenging NASA's ideology and claims about the origin of life on Earth.  In the present case, in addition to slander, defamation, trade libel, and flagrant violations of the 1st and 14th Amendment, NASA claimed it has the right to exercise prior restraint over the press and speech and that it has the authority to determine if and what JOC may publish, and then viciously and maliciously attacked and destroyed JOC's reputation because JOC lacked NASA's authorization and had become increasingly influential and was challenging NASA's ideology. As stated on NASA's website, NASA even sponsored a venue where an author was threatened with death for publishing in JOC, that he should be "hung"  simply because this author and JOC published research which challenged NASA's belief that all life originated on Earth, a belief which is based not on science but on the Jewish and Christian religious text Genesis 1.

3.     As detailed in this second amended complaint,  A) NASA has violated the First and Fourteenth Amendment of the U.S. Constitution; B) has "chilled," suppressed, and exercised prior restraint on freedom of speech and the press;  C) has forced its' religion-based beliefs on the entire scientific community and the public;  D) has claimed the right to restrain the press and has engaged in "prior restraint" to suppress and prevent this Plaintiff and his scientific journal from publishing evidence and theories which challenge NASA's ideology and religion-based claims as to life's origins; E) has sought to limit the "marketplace of ideas" to a single idea endorsed by NASA; F) has censored and faked evidence so as to limit speech  and to prevent the discovery and publication of evidence which challenges their ideology (Exhibits A, B, C, D, E, F, G, H); G) has defamed, slandered JOC, and has encouraged others to repeat and expand upon the defamations and slanders published by the Defendants as if they were established facts, H) has encouraged hatred, a mob mentality, and threats of death at a NASA sponsored event, e.g, "**hanging Hoover in the conference center lobby**" for publishing his findings in JOC, I) has so terrorized the scientific community regarding these issues that a scientist who was

promised anonymity because of his links to NASA and who had agreed to assist Plaintiff with the analysis of specimens in the thermosphere, withdrew out of fear; **J)** Sought to banish JOC and to prevent scientists from reading or publishing in JOC; **K)** has sought to convince the news media to stop reporting on discoveries published in JOC; **L)** committed Trade Libel as two of the defendants are also editors at journals owned by Cambridge University Press and Mary Ann Liebert, Inc both of which were in competition with JOC for authors and readership; **M)** successfully destroyed the reputation of JOC and so terrorized the scientific community that the readership of JOC was reduced by 92%, and the number of authors willing to publish in JOC was reduced by 77.5%--clear evidence that the Defendants successfully chilled speech, achieved prior restraint over JOC and violated the no "prior restraint" provisions of Federal law as well as the 1st and 14th Amendment rights of this Plaintiff.

### A) Right to Due Process: Plaintiff Has Cause, Standing

4.      This is a civil rights action to protect and vindicate the First and Fourteenth Amendment rights of Rhawn Joseph the founder of the Journal of Cosmology. By policy and practice, NASA unlawfully restricts and chills constitutional rights to free expression and it has restricted and violated the Plaintiffs' constitutional rights specifically. Accordingly, NASA's policies and practices are challenged on their face and as applied to Plaintiff. This action details six causes of action and seeks declaratory and injunctive relief and damages.

5.      Plaintiff in filing the first and now this second Amended Complaint has now twice met the legal standards to show cause and standing as outlined in "Federal Rule of Civil Procedure 8(a)(2)" which "requires only a short and plain statement of the claim showing that the pleader is entitled to relief" and which "contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face (Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 ,570 (2007) such that a neutral, unbiased judge who is not acting as an advocate for the defense may "draw the reasonable inference that the defendant is liable for the misconduct alleged (Id. at 556. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A complaint that states a plausible claim for relief survives a motion to dismiss" (Id. at 1950). In this case, no motion for dismiss has been filed.

6.      This Plaintiff also has a constitutional right to due process (Hurtado v. California, 110 U.S. 516 (1884); Snyder v. Massachusetts, 291 U.S. 97, 105 (1934); Washington v. Glucksberg, 521 U. S. 702, 720). This includes the right, as guaranteed by the Fifth and Fourteenth Amendment, to have this case heard by a neutral, unbiased judge with no conflicts of interest and who does not openly advocate for the defense (Murray v. Hoboken Land, 59 U.S. 272 (1855); <u>Caperton v. A. T. Massey Coal Co.</u> (June 8,

2009); Snyder v. Massachusetts, 291 U.S. 97, 105 (1934)). According to the Supreme Court, judges do not have the right to deny a Plaintiff or a Defendant their rights to due process especially when there are conflicts of interest, where the judge is already biased and where there are issues of "probable bias" even if that bias is based on ideology and not money and influence <u>Caperton v. A. T. Massey Coal Co.</u> (June 8, 2009). Judge Whyte receives his salary from and is employed by the same Federal government of which Defendant NASA is a part, has acted as a forceful advocate for the defense, and has interpreted case law and the U.S. Constitution in a light which is designed to protect this government agency from the profound legal consequences of its conduct, and has twice indicated his intention to dismiss regardless of the facts which are as follows.

### B) Defendants Chill Speech, Exercise Prior Restraint on Press, Defame & Libel JOC

7.        Defendants have libeled, slandered, and defamed Plaintiff and his property the Journal of Cosmology (JOC) and sponsored an event where a scientist who had published in JOC was threatened with death; and they did so with the explicit intent to "chill speech," restrain the press, terrorize and frighten all scientists who challenge NASA's dogma as to the origins of life, and to punish and destroy JOC and put it out of business for publishing theories and discoveries the Defendants did not approve of. The Defendants essentially sought to banish JOC and remove it from the reading lists of the public and the scientific community.

8.        The Courts have repeatedly ruled that just the attempt to suppress material the government considers controversial or which it does not approve is a violation of the First Amendment (see Campbell v. St. Tammany Parish School Board, 64 F.3d 184 (5th Cir. 1995); In Loewen v. Turnipseed, 488 F. Supp. 1138 (N.D. Miss. 1980); Sund v. City of Wichita Falls, Texas, 121 F. Supp. 2d 530 (N.D. Texas, 2000); Counts v. Cedarville School District, 295 F.Supp.2d 996 (W.D. Ark. 2003); Board of Education, Island Trees Union Free School District No. 26 v. Pico, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982)).

9.        When JOC published discoveries of microfossils of bacteria in meteors older than this solar system, Defendants Morrison and Mancinelli of NASA, and who are editors at two journals competing with the Journal of Cosmology, sought to destroy the reputation of JOC and both were widely quoted in the news media as stating as established fact and as representatives of NASA and the journals they edit, that "**the Journal of Cosmology**" which Plaintiff founded, owned, and published, "**does not peer review**" the articles it publishes, and therefore, according to Morrison, it "**is not... a real journal... The Journal of Cosmology... is an April fool's joke**" and that articles published in JOC should "**not...be taken seriously.**" Morrison and Mancinelli in their dual roles as editors of competing journals,

therefore engaged in trade libel.

10.     Morrisson and Mancinelli also conspired with Paul Hertz of NASA who released an official NASA statement to the news media, claiming that **"The journal of Cosmology.... does not peer review"** and that NASA has the right to exercise prior restraint over JOC and the press; that NASA has the right to determine which journals can or can not publish, and that JOC failed to obtain permission, authorization, support, and backing from NASA, and that, according to Hertz: **"NASA cannot stand behind or support... the recent submission of the paper to the Journal of Cosmology or of the paper's subsequent publication..."**

11.     Plaintiff and JOC do not require NASA's "support." In Loewen v. Turnipseed, 488 F. Supp. 1138 (N.D. Miss. 1980): U.S. District Judge Orma R. Smith ruled that the government does not have the right to approve what is published and is read or available, even if the subject matter is considered too controversial. Such restraints are a violation of constitutionally guaranteed rights of freedom of speech and the press. Nor can books, or journals be suppressed because the government objects to the ideology of its contents (Case v. Unified School District No. 233, 908 F. Supp. 864 (D. Kan. 1995)) and JOC is both a journal and a book.

12.     In Nebraska Press Assn. v. Stuart, the United States Supreme Court has ruled "that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." Likewise, in Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931): the Supreme Court interpreted the First and Fourteenth Amendments to forbid "previous restraints" upon publication. "Previous restraints"--or in current terminology, "prior restraints--suppress the freedom of the press to publish without obstruction."

14.     By defaming, slandering, and attacking the legitimacy of JOC and its rights to publish, and by stating that the government has the right to authorize what JOC publishes, by attempting to banish JOC from the readings lists of the public and scientific community, and by censoring and faking data (Exhibits A, B, C, D, E), the Defendants have therefore obstructed and claimed they have the right to exercise prior restraint and to punish JOC for publishing what Defendants oppose, and have obstructed, chilled, and sought to exercise and have exercised the forms of censorship which have been outlawed (Nebraska Press Assn. v. Stuart; Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)).

15.     Like most scientific journals, the Journal of Cosmology can be considered a newspaper, magazine, and a book. Various editions of JOC are bound in book form and made available as E-books and as an electronic magazine. And yet, in defiance of the First and Fourteenth Amendment's the

Defendants sought to obstruct, discredit and marginalized JOC, to banish it from the reading lists of abstracting services, to convince scientists and the public not read JOC, and to convince the news media that it should not report on articles published by JOC. In so doing, Defendants NASA et al's conduct is actionable as NASA's behavior is little different from other government agencies which have illegally sought to marginalize, suppress, obstruct, and restrict access to books and periodicals (Evans v. Selma Union High School District of Fresno County, 222 P. 801 (Ca. 1924); Rosenberg v. Board of Education of City of New York, 92 N.Y.S.2d 344 (Sup. Ct. Kings County 1949); Todd v. Rochester Community Schools, 200 N.W.2d 90 (Mich. Ct. App. 1972); Minarcini v. Strongsville (Ohio) City School District, 541 F.2d 577 (6th Cir. 1976); Salvail v. Nashua Board of Education, 469 F. Supp. 1269 (D. N.H. 1979).

16.     Morrison and Mancinelli are employees of NASA, and exercise editorial control and thus "prior restraint" over two obscure journals which were in competition with JOC, i.e. the international journal of astrobiology" (which is published by Cambridge University Press), and "Astrobiology" (which is published Mary Ann Liebert, Inc) and which have a combined yearly readership of less than 10,000 making them "fringe" journals. Morrison and Mancinelli, therefore, libeled, defamed, slandered, and engage in Trade Libel, as they were seeking to destroy the reputation and to silence and put out of business a competitor with a monthly readership which easily dwarfed their own, and which had reached an audience of over 430,000 during the month of March of 2011 at which time the Defendants began publishing these defamatory trade libels. Clearly their intention was to libel and destroy a popular mainstream competitor which had repeatedly published scientific articles which repeatedly received national and international media attention and which had become increasingly influential and this meets Case law requirement for a claim of trade libel [Mann v Quality Old Time Service, Inc. 120 Cal. App. 4th 90, 104 (20040; Leonardi v Shell Oil Co., 216 Cal. App 3d 457, 572 (19800); 42 U.S.C. § 1983], and for both trade libel and defamation [Franklin v. Dynamic Details, Inc., 16 Cal. App. 4th 375, 384 (2004).; Martintelli vs International House USA, 161 Cal. App. 4th 1332, 1337 (2008); (Cunningham vs Simpson, 1 Cal. 3d 301, 307; Haley v Casa Del Rey Homeowners Ass'n 153 Cal. App. 4th 863, 877 (2007)].

17.     Hertz, as an official representative of NASA, conspired with Morrison and Mancinelli to destroy JOC, and also stated that the "International Journal of Astrobiology" which is edited by Defendant Mancinelli and controlled by NASA which exercises prior restraint over its contents, had "qualified experts" who should determine if articles should be punished, and that this NASA edited "International Journal of Astrobiology" had the right to determine what can or can't be published whereas JOC did not. As seconded by Defendant Morrison who is an editor at a competing journal, Astrobiology:

**"If Hoover wants to be taken seriously... he needs to publish this in a real journal"** i.e. Morrison's journal. Thus, Morrison and Hertz believe that they have the right to determine what is "a real journal" and only these "real journals" controlled by NASA can determine if an article may be published; and this constitutes illegal prior restraint as well as trade libel. Hertz also stated that NASA has the right to determine if editors at JOC are "qualified experts" and that NASA had decided that the experts at JOC were not "qualified experts" and did not have NASA's approval to publish. NASA, Hertz, Morrison and Mancinelli in making these statements to the press, also encouraged others to attack and defame JOC; attacks which included a death threat at a NASA sponsored event.

18.     Defendants NASA, Hertz, Morrison and Mancinelli defamed, slandered, and libeled this Plaintiff and his property JOC, and sought to "chill speech" and exercise "prior restraint" so as to restrict the "marketplace of ideas" to a single idea endorsed by NASA, and in so doing violated the First and Fourteenth Amendment. They destroyed JOC because JOC posed a direct threat to the Defendant's ideology as to the origins of life which is refuted by science but is instead based on the Jewish and Christian religious text Genesis 1.

### C.     Defendants Promote Religion, Attack Heretics, Restrict Marketplace of Ideas

19.     As detailed in chapter 1 of the Tenakh, i.e. the first of the five books of Moses known as the Torah, and which is also known as "Genesis" and the "Old Testament" of the Christian Bible, the Earth after its creation possessed special, supernatural life generating powers and the earth possessed the essential ingredients and powers to create life from non-life: "Let the land produce vegetation: seed-bearing plants and trees on the land that bear fruit with seed in it, according to their various kinds" (Genesis 1:11). "Let the water teem with living creatures," (Genesis 1:20). "Let the land produce living creatures," (Genesis 1:24). Thus, a variety of creatures and life forms were independently produced by the Earth in successive waves according to Genesis.

20.     As summed up by an early "father" of the Catholic Church, Saint Augustine, "The earth is said...to have received the power of producing life"--St Augustine, Bishop of Hippo Regius. This view on the origin of life is identical to that of NASA (see  http://neo.jpl.nasa.gov/neo/life.html): "Although the exact process by which life formed on Earth is not well understood... Life on Earth began... some 3.8 billion years ago.... As soon as life could have formed on our planet, it did." Moreover, according to NASA life was formed from the earth "many" times such that multiple "life forms" were created some of which did not survive because of calamities thereby "allowing only the most adaptable species to evolve further;" a view consistent with the religious text Genesis where the earth caused a variety of life forms to

Plaintiff's 2nd Amended
Complaint

7

Rhawn Joseph
677 Elm St., San Jose, CA 95126
408-286-9833, DearDoctorJoseph@Gmail.com

spring to life, most of which were destroyed by a calamity which allowed only those which survived and which were the most worthy, to go forth and multiply (Genesis 1, 5).

21. NASA's claims are based on religious belief, are totally devoid of evidentiary support and are refuted by the overwhelming evidence which demonstrates, conclusively, that life on Earth came from space and was deposited on this planet encased in meteors, asteroids, comets, and pieces of planet which bombarded Earth for the first 800 millions years after its creation (see "Life on Earth Came From Other Planets" Journal of Cosmology, 1, 1-50, 2009; and Journal of Cosmology Vol 7, 2010; for extensive references). By contrast, there is absolutely no scientific or factual evidence to support NASA's official position which is simply the story of Genesis dressed in the language of science. And NASA, like other religions, demands conformity of thought and claims that it alone represents the one truth faith and is intolerant of and attacks other points of view which NASA considers heresy.

22. JOC published several dozen articles supporting NASA (e.g. Vol 12, Edited by NASA Senior Scientist Joel Levine) and NASA's ideology that life began on Earth (e.g. Vol 10, edited by NASA/JPL scientist Michael Russell), but also published dozens of articles demonstrating life could not have originated on Earth; and thus JOC was targeted for destruction by Defendants as it was becoming an increasingly influential mainstream journal, was publishing hundreds of peer reviewed articles by scientists from NASA and the top universities in the world, and receiving extensive national and international news media coverage in 2010 and 2011, and again with the publication of Hoover's discoveries which directly challenged NASA's theology about life's origins. The Defendants, therefore launched a malicious campaign of slander, defamation, and libel, referring to JOC as "garbage," a "fringe journal," that "no one takes it seriously" that it "does not peer review" and so on, even threatening a scientist who published in JOC with death, thus sending a chilling message to the entire scientific community and anyone who dared to challenge NASA's ideology: Be afraid. We will destroy you.

23. NASA is clearly promoting religion not science when it comes to questions as to the origins of life, and as such, NASA has created a national religion in the name of science but which is based on Genesis 1 and which is devoid of any evidentiary support and which is in fact disproved by overwhelming scientific evidence which demonstrates conclusively that life did not originate on Earth but fell to Earth and came from space encased in meteors, comets, asteroids, and pieces of planet which struck Earth for its first 800 million years. Nobel prize winners and famous scientists from around the world including Francis Crick the father of modern genetics and discoverer of the genetic code, reject any possibility that life was fashioned on Earth.

24.     By promoting the story of Genesis 1 dressed in the language of science and maliciously attacking all other secular points of view and restricting the "marketplace of ideas" to a single idea based on the Jewish and Christian religion, NASA is in violation of the 1st Amendment which bars government advocacy of any religion or religious doctrine and which bars the persecution of those heretics, such as this Plaintiff and JOC, who do not bow down to these government sponsored religious beliefs.

25.     NASA has also violated the Establishment Clause which prohibits 1) the establishment of a national religion, and 2) the preference by the U.S. government of one religion over another. Moreover, NASA has failed the "Lemon test" (Lemon v. Kurtzman, 403 U.S. 602 (1971). NASA has shown an excessive entanglement with the Jewish and Christian religions and engages in the same practices of these two religions since their inception, by promoting their versions of the origins of life and attacking heretics who claim life began on other planets and that there is evidence for extraterrestrial life.

26.     The Defendants have also violated the California Constitution, Article 1, SEC. 4. which guarantees freedom from government mandated religious preference and that one shall not be discriminated against because of religion.

27.     NASA and the other Defendants by threatening, attacking, defaming, libeling all other points of view and its promotion of a religious based ideology as to life's origins, cannot be considered open to other secular ideas or that its ideology is "content neutral." This conduct and these policies do not further a substantial government but religious interest, and it unreasonably limits communication and this is actionable (see 475 U.S. at 46, 106 S.Ct. 925; Johnson v. City of Pleasanton, 982 F.2d 350, 353 (9th Cir.1992), citing Renton, 475 U.S. at 47, 106 S.Ct. 925). The conduct of the Defendant's serves only to chill and suppress speech and expression, to restrain freedom of the press and to impose a religious view as to the origins of life on the public and scientific community and this is actionable (Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); Nebraska Press Assn. v. Stuart).

### D.     Peer Review: Defendants Libel, Slander, Defame Plaintiff & JOC

28.     NASA claims as to life's origins, i.e. that all life originated on Earth, are based on religion, not science, which is yet another reason NASA attacks all those who publish evidence challenging NASA's ideology, including JOC.  However, to discredit JOC, NASA needed to convince the news media and the public that JOC was "not a real journal" which only published "garbage." Therefore the Defendants stated, as established fact, that the "Journal of Cosmology... does not peer review" which is like saying a medial doctor never went to medical school, does not have an M.D., and is not a real medical doctor but a fake and a fraud. The Defendants were not offering up an opinion, but claiming as

an established fact endorsed by NASA that JOC does not peer review and was not a real journal but a fake and a fraud and that everything published in JOC and everything that might be published in the future was fake and a fraud. Defendants' message therefore is: Do not read JOC and do not publish in JOC because everyone will think your work is fake and was not peer reviewed. In consequence, the number of authors publishing articles in JOC dropped by 77.5%; evidence that Defendants chilled speech and had successfully restrained JOC and thus the press.

29. "Peer review" is the essential si·ne qua non standard which all scientific journals and scientific institutions must adhere to and which was the standard JOC adhered to such that all articles were peer reviewed; and evidence that JOC peer reviewed can be easily supplied to a jury and a court. Articles must survive peer review to prove they are scholarly and scientifically sound. Following peer review JOC rejected approximately 70% of all articles submitted without invitation, and rejected approximately 30% of invited articles. JOC adhered to the highest standards and this Plaintiff believes "peer review" is an extremely helpful tool so as to ensure that all articles are scholarly, up-to-date, and of the highest quality. It is these standards which contributed to the high quality of articles published by JOC and its amazing growth in readership in less than 2 years; dwarfing the readership of two obscure journals edited by the Defendants who are employed by NASA.

30. Plaintiff has a partial list of Referees who have peer reviewed articles for JOC and who have agreed to be identified and which can be introduced as evidence. JOC has also published peer reviewed scientific articles from NASA scientists working at every major NASA facility in the world including NASA headquarters, and every author who has submitted an article to JOC received copies of referee's independent peer reviews of their work. Authors were in fact required to revise their articles according to reviewer's comments. Two editions of JOC were edited by NASA senior scientists, Michael Russell and Joel Levine, both of whom can be called as witnesses to attest to JOC's rigorous peer review process. On January 5, 2011 (two months before Defendants NASA et al launched their defamatory attack) Dr. Joel Levine, NASA Senior Scientist Science Directorate, held a press conference at NASA headquarters attended by several representatives from NASA headquarters, as well as JOC editor-in-Chief Rudolf Schild (of the Harvard-Smithsonian) and Lana Tao (of the Journal of Cosmology) who, along with Dr. Levine, made comments during that press conference. Joel Levine, Rudolf Schild and Lana Tao can be called as witnesses to what transpired and so too can Plaintiff who listened in by speaker phone. Joel Levine stated to the press that all the articles published in the Journal of Cosmology had undergone "rigorous" and "extensive peer review," by top experts including experts who were rivals to

the authors, and that his own papers had been peer reviewed, and that he and other contributors had been required to revise their papers following peer review before they could be published. Levine stressed repeatedly how top experts from around the world had reviewed all articles submitted to JOC. In January of 2011, Dr. Levine also contacted defendant Paul Hertz of NASA about the possibility of a collaborative relationship between NASA and the peer reviewed Journal of Cosmology and emails can be provided to the Court to prove this press conference and these discussions were held.

31.     In March of 2011, JOC published the peer reviewed discoveries of Richard Hoover of NASA who discovered microfossils, including fossilized colonies of cyanobacteria, in several meteorites including those older than this solar system. Hoover's article was extensively peer reviewed, he was required to revise it twice, and the final revision and over 24 reviews of this work were published in the same online edition of JOC and attached by links to the Hoover article. Almost all of these reviews were supportive and only a few voiced caution, and only one out of 24 disagreed with the results. As was the case with many other articles published in JOC, the Hoover paper received world wide attention and unnamed sources at NASA were quoted in the media complaining about all the publicity JOC was receiving. There followed the coordinated attacks by Defendants NASA, Hertz, Morrison, Mancinelli, and numerous unnamed sources at NASA:

32.     "The Journal of Cosmology... is not peer reviewed" - Defendant David Morrison, NASA employee and an editor at the journal of Astrobiology (owned and published by Mary Ann Liebert,

33.     "The Journal of Cosmology... is not peer reviewed" -Defendant Rocco Mancinelli, NASA employee and editor of the International Journal of Astrobiology (published by Cambridge University Press).

34.     "The Journal of Cosmology... is not... a real journal... The Journal of Cosmology... is an April fool's joke." - Defendant David Morrison, NASA employee and at editor at the journal of Astrobiology (owned and published by Cambridge University Press).

35.     "NASA cannot stand behind or support a scientific claim unless it has been peer-reviewed or thoroughly examined by other qualified experts." -Paul Hertz, chief scientist of NASA's Science Mission Directorate in Washington.

36.     Defendant Hertz issued his statements in an official NASA press release, and in addition to claiming JOC does not peer review, explicitly stated that JOC does not have "qualified experts" and that the Hoover paper was not peer reviewed and was not thoroughly examined by qualified experts. Hertz is lying and he knew he was lying. The "qualified expert" who supervised the review of the Hoover article,

was Dr. Chandra Wickramasinghe. Wickramasinghe is the "father" of the field of astrobiology and established the first astrobiology research center in the world (at Cardiff University) and was a colleague and co-author of Sir Fred Hoyle who coined the terms "the big bang" and "astrobiology." In addition, over 20 commentaries which peer reviewed and examined the evidence in the Hoover paper were published online with the Hoover paper, only one of which disagreed with the results. Hertz is a liar and he knew he was lying; his purpose was to chill speech and claim that NASA has the right to engage in prior restraint and determine what can or can't be published and that JOC did not have NASA's approval.

37.     Subsequently, reporters and journalists began quoting Hertz, Morrison, Mancinelli, and unnamed NASA employees and associated publicity seeking charlatans , all of whom began echoing NASA official talking points, falsely claiming JOC does not peer review, and because it supposedly had no qualified experts did not peer review as claimed by NASA, that JOC was therefore a "joke," that "no serious scientist publishes" in or "reads" JOC, that JOC was a "fringe journal," that it publishes "garbage," and that JOC's editorial board and everyone who had published in JOC were essentially "crackpots" and "not real scientists"  and that the Journal of Cosmology, its authors and editorial board, and anyone who believed there was evidence of extraterrestrial life or that microbes could live in space or on other planets or in meteors, were "ginned up" "crackpots." Even the online "encyclopedia" Wikipedia began printing these slanders as established fact, simply because all these defamatory statements had the official backing of NASA.

### E.     NASA Threatens and Promotes Threats of Violence Against JOC Authors

38.     Through defamation, slander, libel, and ridicule NASA sought to destroy JOC, to terrorize and frighten the entire scientific community, and created a mob mentality so no one would dare publish evidence of extraterrestrial life for fear of attack. As stated on NASA websites and as widely reported in the news media and Science Magazine, an unnamed individual attending the annual NASA sponsored Lunar and Planetary Science Conference urged that Richard Hoover should be killed and suggested "**hanging Hoover in the conference center lobby**" for publishing his findings in JOC. Clearly, the message from Defendants is: Challenge us and we will destroy you. Publish in JOC and we may kill you.

39.     The Supreme Court has cited three "reasons why threats of violence are outside the First Amendment": "protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." (R.A.V. v. City of St. Paul, 505 U.S. 377, 388 (1992). One scientist who had agreed to assist Plaintiff in the analysis of specimens in the thermosphere withdrew out of fear of NASA.

40.     The Ninth Circuit concluded that a "true threat" is "a statement which, in the entire context and under all the circumstances, a reasonable person would foresee would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." ( Planned Parenthood v. American Coalition of Life Activists, 290 F.3d at 1077  (9th Cir. 2002)) "It is not necessary that the defendant intend to, or be able to carry out his threat; the only intent requirement for a true threat is that the defendant intentionally or knowingly communicate the threat."(290 F.3d at 1075  (9th Cir. 2002)). NASA is responsible for these threats because NASA created a mob mentality and a state of near hysteria and anger directed at JOC based entirely on the untrue statements made by the Defendants to the press.

**F.     Defendants Ban, Censor, Suppress, Restrict & Chill Freedom of Speech & Press**

41.     The courts have ruled that  threats, harassment, slander, defamation, libel, intimidation, "opprobrium, reprisals, and threats of reprisals... are substantial disincentives" to express one's beliefs or views and serves to "chill" speech and this is actionable and a violation of the First Amendment (see Familias Unidas v. Briscoe, 619 F.2d 391, 399 (5th Cir. 1980).  According to according case law any form of intimidation and harassment  creates a "legal presumption" that expressing one's views will result in retaliation. Just the threat of retaliation "chills" speech and this is a violation of the First Amendment (Averill,  325 F. Supp. 2d at 1179).

42.     According to case law any resulting diminution in speech is proof that the First Amendment has been violated (Dickerson v. United States, 530 U.S. 428, 459 (2000) (discussing  the Supreme Court's First Amendment case law).  Readership and the number of authors willing to publish in JOC dropped by over 77% after Defendants launched their attacks.

43.     JOC was founded in September of 2009. In the first 18 months of JOC's existence, Plaintiff/JOC had published 14 editions and four special sections, 435 articles and 591 authors  at which point the Defendants launched their attacks on JOC, vs 9 editions, 190 articles and 249 authors over the ensuing 35 months (from June 2011 to May of 2014). The Before and After statistics are striking:  24 articles vs 5.4 articles a month (a 77.5% reduction), and 32.9 vs  7.1 authors a month (an 78% reduction) after the Defendants' defamatory attacks.

44.     The 77.5 to 78% reduction in the number of authors and articles published by JOC after Defendants attacked JOC and the 92% decline in readership (437,000 in March vs 32,000 a month after), profoundly demonstrates that the Defendants were successful in restraining JOC, chilling speech and destroying this journal. This evidence of the diminution in speech is proof that the First Amendment has

been violated (Dickerson v. United States, 530 U.S. 428, 459 (2000) (discussing the Supreme Court's First Amendment case law). Defamation, slander, libel, threats of death! Clearly, NASA e al. have created "substantial disincentives" to express one's beliefs or views and this is actionable (Familias Unidas v. Briscoe, 619 F.2d 391, 399 (5th Cir. 1980). Clearly the Defendants have placed "a serious burden upon the freedom of discussion" and this is actionable (see Minarcini v. Strongsville (Ohio) City School District, 541 F.2d 577 (6th Cir. 1976).

45.     The Defendants, therefore, flagrantly violated the First and Fourteenth Amendments of the U.S. Constitution, which guarantees freedom of speech and the press and freedom from prior restraint or government interference.

46.     The Courts have ruled that just the attempt to suppress material the government considers controversial or which it does not approve, places "a serious burden upon the freedom of discussion" (Minarcini v. Strongsville (Ohio) City School District, 541 F.2d 577 (6th Cir. 1976), even if the book or periodical remains available for those willing to put the effort to seek it out, is a clear violation of the First Amendment (see Campbell v. St. Tammany Parish School Board, 64 F.3d 184 (5th Cir. 1995); In Loewen v. Turnipseed, 488 F. Supp. 1138 (N.D. Miss. 1980); Sund v. City of Wichita Falls, Texas, 121 F. Supp. 2d 530 (N.D. Texas, 2000); Counts v. Cedarville School District, 295 F.Supp.2d 996 (W.D. Ark. 2003); Board of Education, Island Trees Union Free School District No. 26 v. Pico, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982)).

47.     Clearly NASA e al. have placed "a serious burden upon the freedom of discussion" and this is actionable: A bedrock principle underlying the First Amendment is that Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable" (Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). "The First Amendment protects the right of individuals to hold a point of view different from the majority" including an idea they find morally objectionable (Wooley v. Maynard, 430 U.S. 705 (1977); City of Ladue v. Gilleo, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed. 2d. 36 (1994). However, this case has nothing to do with morality but with ideology and NASA's demands that the "marketplace of ideas" as to the origins of life be limited to one idea; i.e. that the story of Genesis 1 is established fact.

48.     As summed up in William Blackstone's Commentaries:: "The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no previous restraints upon publications... Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this, is to destroy the freedom of the press... (4 Bl. Com. 151, 152.)

### G. Defendants Censor Evidence To Chill & Restrict Speech & The Press

49.     Defendant NASA when not defaming, libeling, slandering, and sponsoring events where scientists are threatened with death, also fakes and censors evidence and data so to ridicule and discredit all opposing idea and theories, and thus restrict speech and the press so as to limit discussion and the "marketplace of ideas" to a single idea endorsed by NASA and Genesis 1, i.e. that all life originated on Earth and Earth is the source of all life. NASA demands conformity of thought.

50.     Defendant NASA and Does 1-100, have also falsified, censored, obscured, tampered with, added layer of visual noise to, and manufactured and created fake evidence in support of NASA's Genesis 1-based theology (Exhibits B, C, D, E, F, G, H) with the explicit aim of restricting and restraining speech and the press; actions which are no different from banning books because of their content as the purpose is to prevent publishers from publishing information which NASA seeks to keep from the public. Clearly, the censoring of data which the Defendants do not want published is actionable: In Nebraska Press Assn. v. Stuart the United States Supreme Court has ruled "that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." The First and Fourteenth Amendments forbid "previous restraints" upon publication. "Previous restraints.... prior restraints--suppress the freedom of the press to publish without obstruction." (Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

51.     The Courts have repeatedly ruled that just the attempt to suppress material the government considers controversial or which it does not approve is a violation of the First Amendment (see Campbell v. St. Tammany Parish School Board, 64 F.3d 184 (5th Cir. 1995); In Loewen v. Turnipseed, 488 F. Supp. 1138 (N.D. Miss. 1980); Sund v. City of Wichita Falls, Texas, 121 F. Supp. 2d 530 (N.D. Texas, 2000); Counts v. Cedarville School District, 295 F.Supp.2d 996 (W.D. Ark. 2003); Board of Education, Island Trees Union Free School District No. 26 v. Pico, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982)).

52.     Censoring information and data so as to keep this information out of books or the press, is no different from censoring or banning a book because the government does not want the public to have access to this information, and this is actionable (Evans v. Selma Union High School District of Fresno County, 222 P. 801 (Ca. 1924); Rosenberg v. Board of Education of City of New York, 92 N.Y.S.2d 344 (Sup. Ct. Kings County 1949); Todd v. Rochester Community Schools, 200 N.W.2d 90 (Mich. Ct. App. 1972); Minarcini v. Strongsville (Ohio) City School District, 541 F.2d 577 (6th Cir. 1976); Salvail v. Nashua Board of Education, 469 F. Supp. 1269 (D. N.H. 1979).

53.     As proved by Exhibit B, and film footage and computer analysis, NASA added 4 layers of

visual noise, one of white noise and 3 layers of alternating red, blue, and green noise to all night time space shuttle film footage so to censor, obscure and cover up evidence of plasma-like specimens engaging in complex life like-behaviors (Exhibits A and B). Moreover, NASA instituted a 20 second broadcast delay so that whenever these specimens or other evidence of extraterrestrial life appears and approaches the space-shuttle or engages in obvious life-life behaviors, NASA can turn off the camera before anyone on Earth can see the data (Exhibit B). NASA added these layers of visual noise and obscured, censored, and sought to destroy this evidence in order to muzzle speech and discussion, and to restrain the press and the scientific community including this Plaintiff, from investigating and reporting on these specimens. NASA demands conformity of thought has even terrorized its own astronauts who are forced to deny seeing what is right before their eyes even after they admit seeing it (Exhibit A, witnesses to be named).

54.     When Plaintiff reported computer and frame by frame analysis of these specimens thereby documenting their-life like behavior (http://cosmology.com/ExtraterrestrialExtremophiles.html), Defendant NASA began a propaganda campaign to convince the scientific community that these specimens were space-junk and there was no need for investigation, whereas Defendants Morrison and Mancinelli who are on the staff of and provide government prior restraint and control over the organization, Search For Extraterrestrial life, used this organization to have emails sent claiming these specimens were "space junk" and "tricks of the camera" and that there was no need for investigation. Thus Defendants NASA, Morrison and Mancinelli, have again sought to discredit this Plaintiff and to censor speech and restrain the press which is a violation of the First and Fourteenth Amendments.

**H.     Defendants Falsify Evidence After Presentation to the Court To Suppress Speech and the Press**

55.     On or about January 17, 2014, Defendants NASA, Callas and Squyres, discovered sitting on a Martian outcrop, what they stated was "like nothing we've ever seen before," and that they were "completely confused" and released and published low resolution, slightly out-of-focus photos taken of a bowl-shaped specimen by the Mars' rover Opportunity on Mars' day Sol 3540, at a distance of 8 to 10 feet from the rover. According to NASA, Callas and Squyres, and as indicated in what they referred to as the "Before" photo, the specimen, they claimed, was not sitting on the same outcrop 12 Martian days earlier on Mars' day Sol 3528 the last time the rover had taken pictures of that outcrop from exactly the same rover location (Exhibits C, D). However, the specimen was in fact present, in miniature.

56.     Plaintiff magnified the "Before" photo of the same Martian outcrop (identified by NASA as the "Before" picture), taken 12 Martian days earlier (Sol 3528); a picture which was taken from the

rover's exact same location and position (Exhibits C, D, E). Upon magnification Plaintiff detected the presence of an identical "donut shaped" specimen, in miniature in the same exact spot where the larger structure was photographed on Sol 3540 (Exhibits D, E). The specimen, in miniature as depicted in Sol 3528, is obvious and resembles a fruiting body of a fungus which has just begun to germinate from spores (see http:// cosmology.com/LifeOnMars.html).

57.     Plaintiff then magnified images of specimen Sol 3540, taken on and after Mars' day Sol 3540, and detected the presence of structures within and upon the top of the bowl-shaped specimen which resemble "paraphyses," tiny mushrooms, and miniature fruiting bodies. Parapheses are spore-producing tentacle-like growths typical of Apothecium (Exhibit F).

58.     On January 27, 2014 Plaintiff filed a writ of mandamus to force NASA to take close up in focus photos of a specimen taken on Mars day 3540. NASA responded with comments made to the magazine Popular Science disputing this Plaintiff's interpretations. Although they had ruled out a "rock" based on the results from the APX instrument on the arm of the Rover, NASA was now claiming the specimen was a rock that had somehow become displaced and had rolled to that outcrop even though the APXS instrument has proven that the specimens composition was unlike any other Martian rock so far analyzed. In fact, there is no evidence of soil displacement near the specimen which is what would be expected if a rock rolled or bounced to that location. NASA, Callas and Squyres and Does 1-100, then conspired to commit fraud and created fake evidence, so as to undermine and discredit this Plaintiff, to obstruct justice and interfere with this Plaintiff's right to due process, and to convince the press and the scientific community that there was no need for further discussion or press coverage. NASA faked and created fake evidence and lied to the press so that the press would stop reporting on this controversy.

59.     As proved by the Before and After photo released by NASA (Exhibit C) and data to be presented to the Court and at trial, on the dates between Sol 3528 and Sol 3540, the rover had not moved to any new location. The rover had remained stationary and in the same exact spot from the time the Before picture was taken (Sol 3538) to the time the After picture was taken (Sol 3540). These two photos taken 12 Martian days apart, were taken from the same exact perspective, location and distance. The rover had not been moved during the period between Mars day 3528 and Mars day 3540 (see Exhibit C).

60.     The Defendants had to convince the press that something occurred between these dates which would explain how that specimen, which they were now calling a "rock" appeared on that outcrop.

61.     As can be seen by Exhibits G, H, and additional data to be presented to the Court and at trial, in February of 2014 NASA, Callas and Squyres and Does 1-100, secretly drove the rover around

specimen 3540 and to another area anterior to the specimen, and then drove the rover back and forth over several rocks, obviously purposefully grinding and crushing these rocks and breaking them apart. This grinding and crushing is clearly evident in photos taken by the Rover which shows how the rover wheels were moved back and forth and from side to side on these rocks, until they broke (see Exhibits G, H). The Defendants then unsuccessfully attempted to drive the rover back to its original position as depicted in Sol 3528 and Sol 3540, but miserably failed.

62.     Although the Defendants deliberately crushed these rocks anterior to and after specimen 3540 had been photographed, they then issued a press release claiming that the rocks had been crushed by the rover between Mars' days 3528 and 3540 and released artificially coloriezed photos of the broken rock pile (Exhibits G, H, I); photos which they admit were taken two weeks after specimen 3540 had been photographed. However, because they failed to move the rover back to its original position, all the photos of the broken rock pile were taken from a completely different position and angle; again proving they moved the rover after photo 3540 was taken, crushed the rocks anterior to specimen 3540 after 3540 had been photographed and thus created fake evidence to cover up their own negligence and incompetence and in allegiance with NASA's theology which dictates that Earth is the origin of all life. Indeed, because the rock pile is anterior to, and according to NASA, supposedly at an incline above and anterior to Sol 3540, there was no need to move the rover, but merely to tilt the camera at a slightly upward angle. In other words, they did not have to move the Rover to photograph the broken rocks, but moved the rover in order to break those rocks, which were broken after they photographed sol 3540.

63.     After breaking these rocks with the rover, and from the rover's new position, the Defendants took pictures of the rocks it had deliberately crushed which were far anterior to the specimen and issued a press release claiming "Mystery solved." Defendants were now claiming that they had proved the specimen 3540 was a rock which had broken off from the smashed rocks and then, magically just plopped down on its axis like a clump of wet dough without leaving any debris field and evidence of its movement such as other displaced rocks or soil in the surrounding area.

64.     NASA faked this data. Before and After pictures taken by the rover on Sol 3528 and Sol 3540 proves the rover had never been moved between these two dates and that the rover could not have crushed the rocks anterior to specimen 3540 between these dates as NASA is now claiming. The rocks were broken after Mars day 3540; and then, NASA, Callas and Squyres and Does 1-100, completely failed to move the rover back to its original position, and then had to issue more lies to explain this.

65.     Defendants NASA, Callas and Squyres, faked this data to obstruct justice, to convince the

press there was no reason to investigate the specimen or take close up photos, and thus to stop discussion and curb free speech and to restrain the press, to discredit this Plaintiff and his theories on life's origins, and to prevent this Plaintiff from conducting research or publishing his findings, and to restrain and limit the marketplace of ideas to a single idea endorsed by NASA; i.e. that all life originated on Earth and Earth is the origin of all life as stated in Genesis 1.

66.     Censoring information and data so as to keep this information out of the press is a form of prior restraint, is no different from censoring or banning a book because the government does not want the public to have access to this information, and this is actionable (Evans v. Selma Union High School District of Fresno County, 222 P. 801 (Ca. 1924); Rosenberg v. Board of Education of City of New York, 92 N.Y.S.2d 344 (Sup. Ct. Kings County 1949); Todd v. Rochester Community Schools, 200 N.W.2d 90 (Mich. Ct. App. 1972); Minarcini v. Strongsville (Ohio) City School District, 541 F.2d 577 (6th Cir. 1976); Salvail v. Nashua Board of Education, 469 F. Supp. 1269 (D. N.H. 1979).

67.     According to case law, the censoring and suppression of information and evidence or material the government considers controversial or which it does not approve is a violation of the First Amendment and a violation of this Plaintiff's First Amendment rights (see Campbell v. St. Tammany Parish School Board, 64 F.3d 184 (5th Cir. 1995); In Loewen v. Turnipseed, 488 F. Supp. 1138 (N.D. Miss. 1980); Sund v. City of Wichita Falls, Texas, 121 F. Supp. 2d 530 (N.D. Texas, 2000); Counts v. Cedarville School District, 295 F.Supp.2d 996 (W.D. Ark. 2003); Board of Education, Island Trees Union Free School District No. 26 v. Pico, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982)).

68.     Moreover, by faking evidence after presentation to the Court, the Defendants have sought to obstruct justice and this is a violation of Federal law (18 U.S. Code § 1505, 1519) and to illegally interfere with this Plaintiff's right to due process.

**I.      Right to Due Process & Jury Trial - Plaintiff Has Shown Cause, Standing**

69.     Plaintiff has now twice demonstrated that the Defendants have violated the First and Fourteenth Amendment, have engaged in censorship and the faking of data so as to restrict this Plaintiff and the public's access to information, have sought to chill and suppress freedom of speech and restrain the press, and have been promoting a belief in life's origins which is identical to the Jewish and Christian religious book, Genesis 1, and have been attacking, defaming, libeling all heretics including this Plaintiff, and have employed defamation and threats of death to terrorize the scientific community into remaining silent for fear of being hung, killed, or having their reputations destroyed. After Defendants attacked JOC and claimed it was not a real journal, that it did not peer review, and that everything it

published was therefore fake and no legitimacy, its readership declined by 92% and the number of authors publishing articles declined by 77.5% from June of 2011 to May 2014 (the present).

70.     Plaintiff has demonstrated a causal connection between the injuries and the conduct complained of, and that Defendants continue to inflict these injuries on this Plaintiff who has been profoundly damaged, and that Plaintiff has "standing to bring his complaint" and "that the injury will be redressed by a favorable decision" if an unbiased judge who is not acting an an advocate for the defense allows the overwhelming evidence of the Defendants' guilt to be presented before a jury. Hence, this second amended complaint meets the requirements of Article III of the U.S. Constitution and established case law [Evident Corp. v. Church & Dwight Co., Inc., 399 F.3d 1310, 1313 (Fed.Cir.2005), Lujan v Defenders of Wildlife, 504 U.S. 555, 650-61 (1992), Valley Forge Christian College v American United For Separation of Church and State, Inc 454, 482 (1982)]. Plaintiff clearly has cause and standing (see Florida Foundation Seed Producers, Inc. v. Georgia Farms Services, LLC, No. 1:10-CV-125, 2012 WL 4840809, at *21 (M.D. Ga. Sept. 28, 2012) (Sands, J.) (citing Nat'l. Serv. Indus., Inc. v. Vafla Corp., 694 F.2d 246, 249 (11th Cir. 1982)); Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989).

71.     This Plaintiff and his property have been profoundly injured, he has been subjected to malicious slanders, libels, and defamatory statements, his authors and collaborators threatened, and he has been unjustly accused and found guilty by NASA of running a fake journal which does not peer review, and this Plaintiff has the right to clear his name, set the record straight, and prove that NASA et al were lying. Plaintiff has the right to "due process" as guaranteed and  by the Fifth and Fourteenth Amendments (Hurtado v. California, 110 U.S. 516 (1884); Snyder v. Massachusetts, 291 U.S. 97, 105 (1934); Washington v. Glucksberg, 521 U. S. 702, 720). As dictated by the Fifth and Fourteenth Amendments, "due process" acts as a safeguard against the government or any government agency, including NASA, which may suppress, interfere with, or harm one's liberty or property or their rights to free speech and a free press. Since 1884, the Supreme Court has consistently held that Fifth Amendment due process means substantially the same as Fourteenth Amendment due process (Hurtado v. California, 110 U.S. 516 (1884). The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests" (Washington v. Glucksberg, 521 U. S. 702, 720). The U.S. Supreme Court has broadly interpreted the "due process clause" as guaranteeing citizens which includes this Plaintiff, the right to procedural due process even in civil cases (Snyder v. Massachusetts, 291 U.S. 97, 105 (1934)).

72.     If this case is dismissed and justice is obstructed, the dismissal will be in defiance of the

law and the U.S. Constitution and the 1st, 5th and 14th Amendments. A dismissal would make a mockery of justice and the Bill or Rights, and would serve only to protect a religion-based ideology and to prevent a jury from hearing the overwhelming evidence and rendering guilty verdicts against Defendant NASA and the malicious mediocrities named as Defendants in this suit.

## II.   CONSTITUTIONAL TORTS, LIABILITY, DAMAGES: NO IMMUNITY

73.   The present case in fact involves major social and ideological issues and violations of the First and Fourteenth Amendment: **1)** the government limits the marketplace of ideas as to the origin of life, to a single idea which is based on the Jewish and Christian religious text Genesis chapter 1 and which the government falsely claims is established fact which is not be to disputed, **2)** The government in defense of its religion-based ideology, fakes and censors data and evidence and **3)** actively crushes and chills and restrains speech and the press, and employs slander, defamation, libel and encourages threats of violence in its ideological war against all prominent heretics, including this Plaintiff, who dispute the government's completely bogus claims that **4)** all life originate on Earth, that life originated on Earth multiple times, that if there is life on other planets it came from Earth--claims which are merely religion masquerading as science and a restatement of the Jewish and Christian religious text, Genesis 1.

74.   No one is above the law; not NASA and not NASA employees. The Defendants do not have a status which puts them above the laws of this country. Nor do they have immunity because they are supposedly above the law and have some unwritten right to violate this Plaintiff's First, Fifth and Fourteenth Amendment rights and to defame, libel, and slander with impunity. Fact is, the Courts have determined that laws and Federal regulations which protect the rights of citizens, including 42 U.S.C. § 1983 (1871) must be interpreted and applied liberally so as to achieve its goal of protecting official violations of federally protected rights (Dennis v. Higgins, 498 U.S. 439 (1991)).

75.   There are no laws which trump or cancel out the primacy and supremacy of the U.S. Constitution and the First, Fifth and Fourteenth Amendments which guarantee this Plaintiff's constitutional and civil rights, which the Defendants have clearly violated, and this is actionable (Butz v. Economou, 438 U.S. 478, 507 (1978); Davis v. Passman, 442 U.S. 228 (1979)). Gomez v. Toledo, 446 U.S. 635 (1980). 42 U.S.C. § 1983 (1871); Daniels v. Williams, 474 U.S. 327 (1986)).

76.   Although the Court may wish to protect and act as NASA's advocate and defender, the defendants are liable and do not have immunity (FTCA, 28 U.S.C. §§ 1346(b), 2671-2680; 42 U.S.C. § 1983 (1871). NASA and each of the individual Defendants are liable for constitutional torts, and are

responsible for their intentional actions and liable according to 42 U.S.C. § 1983 (1871).

77. Plaintiff recognizes that NASA employees are not agents of the Federal Bureau of Narcotics. Nevertheless, the rulings of the Supreme Court in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) are obviously applicable to this case. The Supreme Court held that government employees and officials who commit constitutional torts, and who violate Plaintiff's constitutional rights as guaranteed by the Bill of Rights, and any violation of these amendments, are liable and Plaintiff is entitled to recover money damages for any injuries he has suffered as a result of their violation of the First Amendment ( Id. at 397.59).

78. No government agency, and this include NASA and its employees can violate the First, and Fourteenth Amendment, chill speech, exercise prior restraint over the press, and seek to censor and banish reading material which includes the Journal of Cosmology; and dozens of Court cases support Plaintiff in this regard (Evans v. Selma Union High School District of Fresno County, 222 P. 801 (Ca. 1924); Rosenberg v. Board of Education of City of New York, 92 N.Y.S.2d 344 (Sup. Ct. Kings County 1949); Todd v. Rochester Community Schools, 200 N.W.2d 90 (Mich. Ct. App. 1972); Minarcini v. Strongsville (Ohio) City School District, 541 F.2d 577 (6th Cir. 1976); Salvail v. Nashua Board of Education, 469 F. Supp. 1269 (D. N.H. 1979); Campbell v. St. Tammany Parish School Board, 64 F.3d 184 (5th Cir. 1995); In Loewen v. Turnipseed, 488 F. Supp. 1138 (N.D. Miss. 1980); Sund v. City of Wichita Falls, Texas, 121 F. Supp. 2d 530 (N.D. Texas, 2000); Counts v. Cedarville School District, 295 F.Supp.2d 996 (W.D. Ark. 2003); Board of Education, Island Trees Union Free School District No. 26 v. Pico, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982)).

79. Clearly NASA e al. have placed "a serious burden upon the freedom of discussion" and have sought to limited the "marketplace of ideas" and this is actionable and Plaintiff's causes of action are supported by numerous court rulings and case law (see Minarcini v. Strongsville (Ohio) City School District, 541 F.2d 577 (6th Cir. 1976); Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); Wooley v. Maynard, 430 U.S. 705 (1977); City of Ladue v. Gilleo, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed. 2d. 36 (1994). And the same is true of libel and defamation.

80. The intentional tort exception, 28 U.S.C. § 2680(h), does not apply to cases involving abuse of process, libel, slander, misrepresentation, deceit, or interference. The Defendants are liable (28 U.S.C. § 1346(b). Defamation therefore is actionable and Plaintiff is entitled to damages according to the Federal Torts Claims Act, and California law (See Martintelli vs International House USA, 161 Cal. App. 4th 1332, 1337 (2008)]: "In order for a defendant to be liable for defamation, the defamatory matter must

be 'published,' i.e. communicated to some third person who understands the defamatory meaning and application to plaintiff." [(Cunningham vs Simpson, 1 Cal. 3d 301, 307; Haley v Casa Del Rey Homeowners Ass'n 153 Cal. App. 4th 863, 877 (2007)].

81.     In Butz v. Economou, 438 U.S. 478, 507 (1978), the Supreme Court held that, in a suit for damages arising from unconstitutional action, federal executive officials exercising discretion are entitled only to the qualified immunity specified in Scheuer (Scheuer v. Rhodes, 416 U.S. 232, 247-248 (1974)), albeit subject to those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business. This does not apply to any of Plaintiff's causes of actions. These were not discretionary acts, but were harmful to the public and to the advancement of science,and to the Plaintiff and served only to chill, restrain and violate constitutional guarantees of freedom of speech and the press. There is no exemption for the violation of constitutional rights to free speech, a free press, freedom from government imposed religious beliefs, or conspiracies to chill speech and to exercise prior restraint over the press.

82.     The Defendants' malicious, odious conduct is not protected by the CDA and meets the standards for violations of California law and civil code [CPC 125; CCC 43, 46(1)(5), 527.6, 1431.2, 527.6, 3294(c), CHSC 1527(g)].

84.     By defaming and destroying JOC, Defendants interfered with prospective rights, property rights, intellectual rights, economic advantage, and existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964)). The Defendants maliciously inflicted personal and professional injuries, and interfered with  prospective rights, property rights, intellectual rights, economic advantage, as well as existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964).

85.     The Journal of Cosmology (JOC) was the Plaintiff's property in which Plaintiff continues to maintain a vested financial interest. Thus Plaintiff is entitled to property damage as NASA et al sought to destroy JOC and to diminish its influence, readership and value (see  (Small v. United States, 333 F.2d 702 (3d Cir. 1964). NASA and the other Defendants are liable for damages to or loss of property or personal injury or professional injury caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his/her office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred (28 U.S.C. §1346 (b). 10 U.S.C. §2733).

86.     The Defendants  altered, faked, obscured, censored, added layers of visual noise, and destroyed evidence, although they had a legal duty to preserve and protect material evidence and records

(See 32 ATLA L. Rep. 230-33 (Aug. 1989) (citing Wilson v. Beloit 97 Corp., 869 F.2d 1162 (8th Cir. 1989) and other cases). California recognizes spoilation as a tort (Smith v. Superior Court., 151 Cal. App. 3d. 491, 198 Cal. Rptr. 829 (1984). As is clear from the evidence, the Defendants have altered records and evidence by adding four layers of visual noise and painting over details of specimens so as to make positive identification impossible and to prevent scientists from seeing what NASA does not want them to see or asking questions NASA does not want asked.

87.     In Berkovitz v. United States, 486 U.S. 531 (1988), the Supreme Court held that the United States could be held liable under the FTCA, because federal employees had failed to follow regulations that specifically prescribed a course of action and instead of examining the evidence, they instead lied about the evidence and sought to censor, distort, tamper with, and impugn the evidence.

88.     All the individual Defendants and Does are liable because they are either NASA employees or funded by NASA and are thus directly linked and meet the "direct links" test, the "public functions" test, the "nexus test," the "Federal actors" test and the "symbiotic relationship" test:  1) "direct links" test, see Lebron v. Nat'l Railroad Passenger Corp., 513 U.S. 374, 397-400, 130 L. Ed. 2d 902, 115 S. Ct. 961 (1995) (a direct link between private corporation and federal government establishes that corporation acted under color of federal law); 2) the public function test, see Rendell- Baker v. Kohn, 457 U.S. 830, 842, 73 L. Ed. 2d 418, 102 S. Ct. 2764 (1982) (a private party performing a function traditionally the exclusive prerogative of the government is a government actor); 3) the nexus test, see Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 42 L. Ed. 2d 477, 95 S. Ct. 449 (1974) (a private party is a Federal actor when there is a sufficiently close nexus between the government and the challenged action of the private party that the action of the private party is fairly treated as that of the government itself); 4)  the symbiotic relationship test, see Burton, 365 U.S. at 862 (a private party is a federal actor when the government has so far insinuated itself into a position of interdependence with that party that the government must be recognized as a joint participant in the challenged activity) [Sarro v. Cornell Corrections, Inc., 248 F.Supp.2d 52,59 (D.R.I. 2003).

89.     Constitutional violations committed by private parties who are directly linked to and who are funded by NASA and who use this association and these funds to violate constitutional rights can be considered "federal actors" (Nwanze v. Phillip Morris, Inc., 100 F. Supp. 2d 215, 220 (S.D.N.Y. 2000), aff'd, 2001 U.S. App. Lexis 7502, 2001 WL 409450 (2d. Cir. Apr. 23, 2001)).

90.     No one is above the law, not even NASA which has flagrantly violated the First and Fourteenth Amendments.

## III.  PARTIES

91.  **Plaintiff:** Plaintiff is Rhawn Joseph, Ph.D., an astrobiologist, neuroscientist, and founder of the Journal of Cosmology (JOC), and owner and publisher of JOC during and at the time Defendants caused Plaintiff and JOC injury and damages; and Plaintiff retains a vested interest in JOC at present and is the owner of Cosmology Science Publishers and Cosmology.com (which published JOC) and all of which were irreparably injured and damaged by the Defendants who conspired to defame and destroy Plaintiff's property when JOC reached a monthly readership of over 430,000 making it one of the most popular mainstream online scientific journals in the world.

92.  **Defendants:** The Defendants in this amended complaint are the National Aeronautics and Space Space Administration (NASA), Charles F. Bolden NASA Chief Administrator, NASA's Paul Hertz, David Morrison, Rocco Mancinelli, John Callas, and Steven Squyres. The names and identities of Does 1-100 are as yet unknown. Defendants NASA will hereafter be referred to as "NASA" or as the "Defendant," whereas Bolden, Morrison, Mancinelli, Callas and Squyres will be referred to by name or as the "Defendants."

## IV.  JURISDICTION AND VENUE

93.  This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and the laws of California.

94.  This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

95.  This Court has authority to grant the requested declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

96.  This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

97.  This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. ' 1331, 1343 (3-4).

98.  Supplemental jurisdiction is asserted over state law claims pursuant to 28 U.S.C ' 1367.

99.  Venue is proper pursuant to 28 U.S.C. 1391(b) and Section 552(a)(4)(B), and 5 U.S.C. § 552(a)(2)(A), (3)(A),(C), (6)(A)(ii), (F), in that Plaintiff's claims arose in the Northern Judicial District of California, two Defendants work in the Northern Judicial District California, Defendant NASA's "Astrobiology" center is located in the Northern Judicial District of California, and one of the editorial

offices for Journal of Cosmology is located in California, and Plaintiff Rhawn Joseph lives in the Northern Judicial District of California.

## V.     FORMAL NOTIFICATIONS OF NASA

100.     Pursuant to CFR 1261.313, on June 12, 2012, Plaintiff served Defendants NASA, Charles Bolden, et al, NASA's Assistant General Counsel for Litigation, and NASA's Office of the Chief Counsel, with a 59 page "Notice of Intention to File Suit in Federal Court" which included 4 Exhibits and a "Complaint for Injunctive Relief." Defendants were also served with an Amended Complaint on April 4, 2014.

101.     As specified by 14 CFR 1261.307 and 313, so long as formal notification of the claim is received by NASA within 2 years of the dates of injury, the statute of limitations is suspended until Plaintiff receives a "final denial of a claim in writing... by certified mail" after which Plaintiff is granted an additional six months to file suit. However, no formal denial and no certified mail was ever received by Plaintiff from NASA or its agents, which means the clock has not yet begun to tick on any possible statute of limitations if any.

## VI.     JURY TRIAL

102.     The Plaintiff demands a trial by jury on each and every one of his claims and causes of action including Plaintiff's Complaint for Injunctive and Declarative Relief.

## VII.     EXHIBITS, WITNESSES

103.     Plaintiff has at least six witnesses and over 24 Exhibits including exhibits depicting the layers of noise NASA added to nighttime film footage and the faking of evidence as pertaining to specimen Sol 3540. Plaintiff will present overwhelming evidence of Defendant's guilt, and will demonstrate with evidence, that all the Defendants' accusations against JOC and Plaintiff are slanders, libels and defamatory lies and constitute trade libel, the purpose of which was to chill speech and the press. NASA and the other Defendants also shoulder the burden of proof and must come forward with an explanation for the Plaintiff's injuries and their conduct (FTCA Handbook, Section IIB4a(1)(b). See, e.g., Huber v. United States, 838 F.2d 398 (9th Cir. 1988)).

## VIII. FIRST CAUSE OF ACTION: Violation of Plaintiff's Right to Free Speech Under the First and Fourteenth Amendments (42 U.S.C. § 1983)

104.     Plaintiff re-alleges and incorporates each of the allegations set forth in all paragraphs

above.

105.   The First and Fourteenth Amendments prohibits the government from violating these rights and these prohibitions applies to all government agencies which includes NASA and its employees who used slander and defamation and who created an atmosphere of fear and retaliation which led to threats of violence against a scientist who had published in JOC, and which led to a 92% reduction in readership and a 77.5% reduction in the number of authors publishing articles in JOC.

106.   All of the acts of Defendants, their officers, agents, employees, and servants were executed, and are continuing to be executed, by the Defendants in violation of the First and Fourteenth Amendments.

107.   The Defendants bear the burden of justifying their attacks on free speech, a free press, and their imposition of prior restraint and why JOC needed government approval to publish.

108.   By harassing, threatening, defaming, slandering, and libeling JOC and by claiming JOC required their prior approval to publish, and by encouraging threats of death against a scientist for publishing in JOC, Defendants explicitly and implicitly chilled Plaintiff's free expression and interfered with and suppressed Plaintiff's rights to free speech and a free press which are guaranteed by the First and Fourteenth Amendments and which is a violation of the California Constitution, Article 1, Sec 2 (a) Every person may freely speak, write and publish his or her sentiments on all subjects; and SEC. 3. (b) (1). Defendants violated what are clearly established constitutional rights.

109.   The reputation of this Plaintiff and JOC and Cosmology and Cosmology Science Publishers were irreparably injured and the denial of constitutional rights is irreparable injury per se, and the Plaintiff is entitled to declaratory and injunctive relief. As a consequence of being denied his First Amendment and Fourteenth Amendment rights, and as witnessed by the over 77.5% reduction in the number of authors willing to publish in JOC, Plaintiffs experienced significant professional injury, financial loss, as well as emotional pain and anguish.

110. Defendants have acted maliciously with the goal of oppression which is actionable and a violation of California Civil Code, 3294. (c)(1) "Malice" means conduct which is intended by the Defendants to cause injury to the Plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights of others. (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

111.   Plaintiff is entitled to General damages, Economic and Special Damages, Pecuniary Damages, Punitive and exemplary damages as well as injunctive relief and a declaration that Defendants

violated his First Amendment rights. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and by jury. According to the U.S. Dept. of Justice, and as indicated in Standard Form 95 block 12d, all claims for money damages must state a claim for money damages in a "sum certain" amount, i.e. a "specific amount." Likewise California Code of Civil Procedure, 452.10 (a) (1,2) requires an estimate as to losses and damages. A. For Plaintiff: Rhawn Joseph, a "sum certain" "specific" amount of $100 Million.

**IX.     SECOND CAUSE OF ACTION**: Facial Challenge to Violation of Right to Free Speech and a Free Press Under the First and Fourteenth Amendments (42 U.S.C. § 1983) – Prior Restraint

112.     Plaintiff re-alleges and incorporates each of the allegations set forth in all paragraphs above.

113.     Plaintiff has a First Amendment right to engage in expressive activities, to conduct research, and to publish his discoveries and to publish a scientific journal which publishes the discoveries of other scientists, and without obtaining the support, backing, authorization or and permission from government officials as guaranteed by the 14th Amendment .

114.     In official NASA statements issued to and published in the news media, Defendants NASA and Hertz declared that "NASA cannot stand behind or support... the recent submission of the paper to the Journal of Cosmology or of the paper's subsequent publication..." and therefore JOC did not have government permission, approval, or authorization to publish; and which is a clear violation of the First and Fourteenth Amendment and chills and places a significant burden on free speech and a free press.

115.     The actions, policies, and conduct of Defendant NASA which include sponsoring an event where a scientist who published his findings in JOC was threatened with death, and a fear of retaliation so profound that another scientist withdrew from collaborating with Plaintiff in a study of structures in the thermosphere,  constitute an unconstitutional prior restraint on First Amendment rights and is a violation of the Fourteenth Amendment.

116.     The reputation of this Plaintiff and JOC was irreparably injured and the denial of constitutional rights is irreparable injury per se, and the Plaintiff is entitled to declaratory and injunctive relief. As a consequence of being denied his First Amendment and Fourteenth Amendment rights, and as witnessed by the over 77.5% reduction in the number of authors willing to publish in JOC, Plaintiffs experienced significant professional injury, financial loss, as well as emotional pain and anguish.

117.     Plaintiffs is entitled to General damages, Economic and Special Damages, Pecuniary Damages, Punitive and exemplary damages, as well as injunctive relief and a declaration that Defendants

violated his First Amendment rights, and rights guaranteed by the California Constitution, Article 1, Sec 2 (a) Every person may freely speak, write and publish his or her sentiments on all subjects;. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and by jury. Defendants have alslo violated California Civil Code, 3294. (c)(1) as their actions were despicable, malicious and designed to deny Plaintiff and others their rights and (2) oppressive. According to the U.S. Dept. of Justice, and as indicated in Standard Form 95 block 12d, all claims for money damages must state a claim for money damages in a "sum certain" amount, i.e. a "specific amount." Likewise California Code of Civil Procedure, 452.10 (a)(1,2) requires an estimate as to losses and damages. A. For Plaintiff: Rhawn Joseph, a "sum certain" "specific" amount of $100 Million.

## X.     THIRD CAUSE OF ACTION: Libel, Defamation, Slander, Trade Libel

118.    Plaintiff re-alleges and incorporates each of the allegations set forth in all paragraphs above.

119.    "The Journal of Cosmology... is not peer reviewed" - Defendant David Morrison, NASA employee and an editor at the journal of Astrobiology (owned and published by Mary Ann Liebert).

120.    "The Journal of Cosmology... is not peer reviewed" -Defendant Rocco Mancinelli, NASA employee and editor of the International Journal of Astrobiology (published by Cambridge University Press).

121.    "The Journal of Cosmology... is not... a real journal... The Journal of Cosmology... is an April fool's joke." - Defendant David Morrison, NASA employee and at editor at the journal of Astrobiology (owned and published by Cambridge University Press),

122.    Two defendants, Morriso, Mancinelli, are editors at journals owned by Cambridge University Press and Mary Ann Liebert, Inc, both of which were in competition with JOC for authors and readership. Morrison, Mancinelli issued their libelous statements for the explicit purpose of putting a competitor, JOC, out of business and to destroy its reputation, and this constitute Trade Libel and defamation [Franklin v. Dynamic Details, Inc., 16 Cal. App. 4th 375, 384 (2004).; Martintelli vs International House USA, 161 Cal. App. 4th 1332, 1337 (2008); (Cunningham vs Simpson, 1 Cal. 3d 301, 307; Haley v Casa Del Rey Homeowners Ass'n 153 Cal. App. 4th 863, 877 (2007); Quelimane Co. Inc., v Stewart Title Guar. Co (1998) 19 Cal.4th 26,47; Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508; CCC 1708]; Mann v Quality Old Time Service, Inc. 120 Cal. App. 4th 90, 104 (20040; Leonardi v Shell Oil Co., 216 Cal. App 3d 457, 572 (19800); 42 U.S.C. § 1983].

123.    Defendants Morrison and Mancinelli issued their libelous, defamatory statements as representatives of NASA and as the editors of two journals in competition with JOC, i.e. "Astrobiology" and "International Journal of Astrobiology. Defendants Morrison and Mancinelli, as representative of a repressive government agency also exercise prior restraint to prevent these journals, as well as JOC, from publishing research and theories that they and NASA disagree with.

124.    Morrison, Mancinell, NASA and Does 1-100 made these defamatory libelous statements with the intention they be published and these libelous statements were made to harm the Plaintiff and harmed Plaintiff, his property and publishing business, and this is actionable. The intentional tort exception, 28 U.S.C. § 2680(h), does not apply to cases involving abuse of process, libel, slander, misrepresentation, deceit, or interference. The Defendants are liable (28 U.S.C. § 1346(b). Libel and defamation are actionable and Plaintiff is entitled to damages according to the Federal Torts Claims Act, and California law (See Martintelli vs International House USA, 161 Cal. App. 4th 1332, 1337 (2008)]: "In order for a defendant to be liable for defamation, the defamatory matter must be 'published,' i.e. communicated to some third person who understands the defamatory meaning and application to plaintiff." [(Cunningham vs Simpson, 1 Cal. 3d 301, 307; Haley v Casa Del Rey Homeowners Ass'n 153 Cal. App. 4th 863, 877 (2007)].    By defaming, libeling, and destroying JOC, Defendants have interfered with prospective rights, property rights, intellectual rights, economic advantage, as well as existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964)).

125.    NASA, Bolden, Hertz, Morrison, and Mancinelli and Does 1-100 are all liable. For example, in Garcetti v. Ceballos, 547 U.S. 410 (2006), the Court held that statements by public employees made pursuant to their employment have no First Amendment protection. Further, NASA et al's defamatory conduct does not promote free speech, but serves to intimidate, injure, damage, and prevent the free speech of those being defamed including this Plaintiff. The Defendants seeks to persuade others that the speech of those being defamed should not be heard and that they should not be allowed to speak and they should not be listened to.

126.    According to Court rulings such conduct chills and prevents speech, and this is because the "opprobrium, reprisals, and threats of reprisals... are substantial disincentives" to express one's beliefs or views (Familias Unidas v. Briscoe, 619 F.2d 391, 399 (5th Cir. 1980). Intimidation, harassment, or reprisals creates a "legal presumption" that expressing one's views will result in retaliation, and that this retaliation chills speech and this is a violation of the First Amendment (Averill,  325 F. Supp. 2d at 1179).

127.    Readership and the number of authors submitting and publishing articles in JOC

diminished by 92% and 77.5% respectively, and this diminution in speech is thus proof that the First Amendment has been violated (see Dickerson v. United States, 530 U.S. 428, 459 (2000) (discussing the Supreme Court's First Amendment case law).

128.    The Defendants have clearly conspired to violate the 1st Amendment to the U.S. Constitution, and Article 1, Sec 2 (a) of the California Constitution, and thus the constitutional and civil rights of the Plaintiff and numerous other scientist and have therefore committed a constitutional tort. According to California Civil Code 43, "every person has... the right of protection... from personal insult, from defamation, and from injury to his personal relations." According to California Civil Code 45, "libel is a false and unprivileged publication by writing, printing... which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Defendants have also acted maliciously and have oppressed this Plaintiff which is a violation of California Civil Code, 3294. (c)(1)(2). The Defendants also maliciously inflicted personal and professional injuries, and interfered with prospective rights, property rights, intellectual rights, economic advantage, as well as existing rights and this is actionable (Small v. United States, 333 F.2d 702 (3d Cir. 1964).

129.    Plaintiff has been severely and profoundly injured by the slanderous, defamatory, libelous, malicious, harassing, and negligent actions of the Defendants and this is actionable [see Quelimane Co. Inc., v Stewart Title Guar. Co (1998) 19 Cal.4th 26,47; Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508; CCC 1708], and a violation of California Civil Code [CPC 125; CCC 43, 46(1) (5), 527.6, 1431.2, 527.6, 3294(c), CHSC 1527(g)].

130.    Defendants have caused Plaintiff Pecuniary damage [Leonardi v Shell Oil Co., 216 Cal. App 3d 457, 572 (19800], and Plaintiff is entitled to Economic or Special Damages for losses related to the injuries inflicted which are a result of Defendants' lies and odious conduct. Plaintiff is also entitled to future damages, including those economic and noneconomic damages that Defendants sought to inflict.

131.    Plaintiff is also entitled to compensation for emotional distress or psychological injury as a result of Defendants' misconduct (see Bush v. Lucas, 462 U.S. 367 (1983). Plaintiff is entitled to noneconomic and general damages, and those losses which naturally or necessarily result from this conduct. General damages include pain and suffering, loss of enjoyment of life, emotional distress, and mental anguish. Thus, Plaintiff is entitled to damages for loss of consortium which relates to factors such as loss of society, loss of respect and loss of enjoyment of life (see Molzof v. United States, 501 U.S. 301 (1992). Plaintiff is entitled to substantial damages even if the Court believes compensation would be

punitive (See U.S. Supreme Court Molzof v. United States, 502 U.S. 301, (1992)). According to the U.S. Dept. of Justice, and as indicated in Standard Form 95 block 12d, all claims for money damages must state a claim for money damages in a "sum certain" amount, i.e. a "specific amount." Likewise California Code of Civil Procedure, 452.10 (a)(1,2) requires an estimate as to losses and damages. A. For Plaintiff: Rhawn Joseph, a "sum certain" "specific" amount of $100 Million.

## XI. FOURTH CAUSE OF ACTION: Violation of Right to Free Speech and a Free Press Under the First and Fourteenth Amendments (42 U.S.C. § 1983) – Censorship, Prior Restraint

132.  Plaintiff re-alleges and incorporates each of the allegations set forth in all paragraphs above.

133.  Defendants NASA and Does 1-100, have censored scientific data by adding four layers of visual noise to all nighttime space shuttle film footage depicting plasma-like specimens engaging in life-like behaviors in the thermosphere 200 miles above the planet, and a 20 second broadcast delay so they can cut off transmission when these specimens approached the space shuttle. Defendants censored this data to prevent scientists and this Plaintiff from investigating, and from speaking, writing, and publishing information on these specimens. Defendants actions therefore, also constitute prior restraint over speech and the press.

134.  When Plaintiff performed complex analyses which proved these specimens were engaging in life-like behavior and sought help from the scientific community in analyzing this data, Defendants NASA, Bolden, Morrison, Mancinelli, and Does 1-100, issued statements claiming these specimens were tricks of the camera and space junk and no investigation should be carried out.

135.  Defendants NASA, Bolden, Callas, Squyres, and Does 1-100, censored scientific data by adding layers of visual noise to photographs of specimen Sol 3540, and they did so to prevent scientists and this Plaintiff from recognizing that this is a biological specimen, and to prevent Plaintiff and other scientists from investigating, and from speaking, writing, and publishing information on this specimen and to convince the public and the media that no one should listen to Plaintiff or report on his discoveries.

136.  Defendants NASA, Bolden, Callas, Squyres, and Does 1-100, also faked and manufactured fake evidence by secretly driving the Mars Rover to a location anterior to specimen Sol 3540 after photographs of Sol 3540 had been taken and after Plaintiff identified this specimen as a composite biological organism. After secretly moving the Rover, Defendants then drove the Rover back and forth over some rocks, and grinding the Rover's wheels over these rocks, breaking them apart, and then tried but failed to move the Rover back to its original location. From this wholly different location

Defendants took photos of the broken rocks and issued a press release proclaiming "Mystery solved" that there was no need for any further investigation, and claiming they had proved specimen Sol 3540 was a rock that had magically moved from the newly broken rock pile, even though Sol 3540 was photographed almost two weeks before they broke the rocks anterior to this specimen.

137.    Defendants censored and faked this data to prevent scientists and this Plaintiff from investigating, and from speaking, writing, and publishing information on specimen Sol 3540. Defendants actions therefore, also constitute prior restraint over speech and the press.

138.    Defendants are also liable for Violation of California laws governing the Spoliation of Evidence. According to law, Defendants have a duty to preserve and protect material evidence and records. See 32 ATLA L. Rep. 230-33 (Aug. 1989) (citing Wilson v. Beloit 97 Corp., 869 F.2d 1162 (8th Cir. 1989) and other cases). California recognizes spoilation as a tort (Smith v. Superior Court., 151 Cal. App.3d. 491, 198 Cal. Rptr. 829 (1984)).

139.    The Defendants are liable also according to case law: In Berkovitz v. United States, 486 U.S. 531 (1988), the Supreme Court held that the United States could be held liable under the FTCA, because federal employees had failed to follow regulations that specifically prescribed a course of action and instead of examining the evidence, they instead lied about the evidence and sought to censor, distort, tamper with, and impugn the evidence.

140.    Thus the Defendants  altered, faked, obscured, censored, added layers of visual noise, and destroyed evidence, although they had a legal duty to preserve and protect material evidence and records (See 32 ATLA L. Rep. 230-33 (Aug. 1989) (citing Wilson v. Beloit 97 Corp., 869 F.2d 1162 (8th Cir. 1989) and other cases). California recognizes spoilation as a tort (Smith v. Superior Court., 151 Cal. App. 3d. 491, 198 Cal. Rptr. 829 (1984). As is clear from the evidence, the Defendants have altered records and evidence by adding four layers of visual noise and painting over details of specimens so as to make positive identification impossible and to prevent scientists from seeing what NASA does not want them to see or asking questions NASA does not want asked.

141.    The government and the Defendants are also liable for misrepresentation and deceit (15 U.S.C. § 2053(h)(1)(A). The intentional tort exception, 28 U.S.C. § 2680(h), does not apply to cases involving  abuse of process, libel, slander, misrepresentation, deceit, or interference. Further, the Defendants and the government are liable as these torts were committed by employees and the Defendants while acting "within the scope of his office or employment." 28 U.S.C. § 1346(b).

142.    The Defendants are also in violation of the California Constitution, Article 1, Sec 2 (a)  by

interfering with this Plaintiff's ability to freely speak, write and publish his or her sentiments on all subjects; and SEC. 3. (b) (1) Plaintiff's right of access to information concerning the conduct of the people's business.

143.    Defendants have also sought to deny this Plaintiff his rights to due process and have engaged in "Fraud" which means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury and this is actionable according to CCC1714. (a), CCC3294 9(c)(3)]. Defendants faked this data after a lawsuit had been filed and they faked this data to obstruct justice.

144.    Plaintiff and other scientists have been profoundly harmed by these illegal actions which served to restrict freedom of the press and to curtail the ability to publish one's discoveries or theories in scientific journals, and this is actionable (Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963); Near v. Minnesota, 283 U.S. 697 (1931); Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971); 403 U.S. 713, New York Times Co. v. United States (No. 1873), No. 1873, 44 F.2d 544, reversed and remanded; No. 1885, ___ U.S.App.D.C. ___, 446 F.2d 1327, affirmed). Plaintiffs is entitled to General damages, Economic and Special Damages, Pecuniary Damages, Punitive and exemplary damages, as well as injunctive relief and a declaration that Defendants violated his First Amendment rights.

## XII.    FIFTH CAUSE OF ACTION: Violation of First and Fourteenth Amendments - Religion, Establishment Clause, Censorship, Prior Restraint

145.    Plaintiff hereby incorporates by reference all stated paragraphs and allegations.

146.    Defendants NASA et al, promote religion masquerading as science and have employed slander, defamation, libel, fear, and threats of violence to limit the marketplace of ideas to a single idea and a single ideology about life's origins which is not based on science but the Jewish and Christian religious text, Genesis 1. Although there is no scientific evidence to support Defendants' theology and overwhelming evidence which refutes it, NASA promotes as established fact that life originated and began on Earth, not just once but several times, and NASA has employed threats, harassment, defamation, libel, and attacks on the free speech and a free press to force all scientists to bow down and accept without question NASA's idolatry.

147.    NASA has a 50 year history of prior restraint, chilling speech, and attacking all those who present evidence of extraterrestrial life and that life on Earth originated from space and fell to Earth from

34

space and was deposited on Earth in meteors, asteroids, comets, and pieces of planet which struck Earth for the first 800 million years after its creation. Plaintiff and his journal, JOC, were simply among NASA's latest victims.

148. For example, in 1996 David McKay along with his colleagues and after laboring in secrecy for fear of retaliation, announced to the world discoveries of biological activity in Martian Meteorites only to be attacked by NASA which provided funding to "attack dogs" (e.g. A.J.T. Jull, J.L. Bada, Allan Treiman, The Lunar and Planetary Institute, etc.) whose purpose was to discredit McKay and impugn and discredit his discoveries; and in this, they succeeded.

148. Defendant NASA was established by the National Aeronautics and Space Act on July 29, 1958, and almost immediately began denouncing discoveries of extraterrestrial microbial life, and funding attacks on the scientists who had published these discoveries. In the early 1960s, after extensive peer review of their findings by independent scientists, the first reports of the detection of microbial fossils in meteorites were published in the prestigious scientific journal, Nature by Claus, Nagy and others (Claus and Nagy, 1961; Nagy et al, 1962, 1963). Claus and Nagy were highly respected scientists and these discoveries included an assortment of fossilized bacteria, including algae and cyanobacteria, in meteors older than this solar system. Defendant NASA immediately launched, directed, and funded a vicious campaign of refutation and denial and defamatory attacks on these scientists and their discoveries (NASA Grant NsG-366). These NASA funded libels were published, printed, and distributed to the media (Anders, 1962; Anders and Fitch. 1962; Fitch et al, 1962), and it was fraudulently claimed that the findings of microfossils were "a deliberate hoax" and due to "deliberate... contamination" (pages 4,5). However, there was absolutely no evidence of a deliberate hoax or deliberate contamination, or that the findings were in any way due to contamination. These were NASA funded lies. Rather, it was Defendant NASA which was engaged in a deliberate hoax.

149. Defendant NASA did not stop with slander, libel and defamation. In scenes reminiscent of the Inquisition and the attacks on Copernicus, Bruno, and Galileo, NASA funded and conducted a malicious campaign to harass, threaten, and bully Claus and Nagy so as to force them to recant and denounce their own discoveries--just like Galileo.

150. NASA, in attacking, slandering, defaming, threatening, frightening, and seeking to silence and discredit all those who believe life did not originate on Earth and that there is life on other planets is in fact following a 2,500 year religious tradition as first practiced by Jews and then Christians who likewise attacked and sought to destroy all those who believed that life did not originate on Earth and

there was life on other planets.

151.   For example, in 1600, Giordano Bruno was denounced by the "scientific establishment" and then arrested by the Inquisition for publishing that the sun and not Earth is the center of the solar system, that other stars were just like our sun and were circled by planets, that life was pervasive throughout the cosmos, and that people like the people of Earth had evolved on these distant worlds. Bruno was threatened, harassed, denounced, and then arrested; and when he refused to back down and recant he was tortured, an iron bar was pounded through his jaw so he could never again speak these blasphemies, and then he was burned alive by the Inqusition. NASA in its 50 year history has also demanded that scientist who presented evidence or arguments contrary to NASA's religion, recant and denounce their own discoveries. NASA burns and silences heretics through threats, slander and defamation spread through the media and the internet and engages in witch hunts little different from that first practiced by Jews and then Christian who waged war against all those, including and especially scientists and philosophers, who did not accept Genesis 1 as gospel truth.

152.   The scientific theory that Earthly life has extraterrestrial origins and that life is pervasive throughout the cosmos, and that life fell to Earth from space, may have been first formally proposed and detailed over two thousand five hundred years ago by the Greek "atomists," who were later known as Epicureans. The atomists were immediately assailed and attacked by the Jewish religious authorities who described these theories as "heresy." Attacks against the "atomists" continued with the establishment of the Catholic Church who also labeled all atomists "heretics" and "blasphemers."

153.   As their name suggests, the "atomists" such as Democritus, Anaxagoras, and Epicurus based their reasoning on atomic theory, concluded that all life forms consisted of atoms and since the universe consisted of atoms, then life must be everywhere throughout the cosmos: As summed up by Epicurus "we must believe that in all worlds there are living creatures and plants and other things we see in this world... For the atoms being infinite in number... have not been used up either on one world or on a limited number of worlds." The atomists also believed that life did not originate on Earth, but that life came from other planets in the form of seeds. The seeds of life flow throughout the cosmos and some of those seeds fell to Earth and this is how life on this planet began.

154.   Jewish and Christian religious leaders referred to the "atomists" as "Epicureans" (after Epicurus) whom they condemned. Attacking and denouncing the "Epicureans" quickly became incorporated into the Jewish religion. Thus it is stated in the Jewish religious book, the Talmudic Mishnah: "All Israel has a share in the world to come. And these are the people who do not merit the

world to come: the ones who deny the resurrection of the dead, and those who deny the Torah is from the heavens, and all Epicureans." In fact, the Jewish word for "heretic" is a transliteration of the word "Epicurean" i.e. Aprikoros and Apikorsim. According to Jewish religious doctrine, these "heretics" should be condemned to death and murdered. Thus, for example, the Jewish prayer known as the "Amidah" begs that "all the Apikorsim be destroyed in an instant." Again, Richard Hoover was threatened with death, to be hung at a NASA sponsored event, for publishing in JOC.

155.    The Catholic Church, following the lead of their Jewish brethren, also denounced the "Epicureans" and singled out Epicurus and Anaxagoras who were described as "self-indulgent... godless... pigs" (St. Augustine). Epicurus's and Anaxagoras's views about the nature of life and the cosmos were labeled "heresy," "blasphemy," and "depraved" and grounds for torture and death (St. Augustine, Clement of Alexandria). The science of "Epicursim" in which it was taught that life existed on other planets and that the seeds of life fell to Earth, became synonymous with "heretics" and "heresy." According to Christian dogma, and as based on the Jewish religious book, Genesis, the Earth had the power of producing life, and life originated began on Earth--dogma which is also the official view of NASA which also attacks and seeks to destroy all heretics who do not accept these religious teachings. The Journal of Cosmology published heretical views, and thus NASA et al destroyed it.

156.    By preaching religion masquerading as science, and attacking all heretics, NASA, and thus the United States, have shown a preference for and has become entangled with the Jewish and Christian religion, and has created what is best described as a "national religion" which, although masquerading as science, is based on the Jewish and Christian religious text, Genesis chapter 1.

157.    By promoting religion masquerading as science, and falsely claiming that life originated in a manner consistent with Genesis 1, and by attacking and seeking to silence all heretics, NASA et al have therefore violated all aspects of the First Amendment and the "separation," "no aid," "non-preferential" and "accommodation" interpretation of the Establishment Clause. Plaintiff has been directly harmed, professionally and personally, and Plaintiff's constitutional rights as guaranteed in the First Amendment have been violated.

158.    Plaintiffs is entitled to General damages, Economic and Special Damages, Pecuniary Damages, Punitive and exemplary damages, as well as injunctive relief and a declaration that Defendants violated his First Amendment rights and that NASA has been promoting religion masquerading as science and suppressing all other points of view as to life's origins.

## XIII. SIXTH CAUSE OF ACTION: Monell Claim Section 1983

159.   Plaintiff re-alleges and incorporates each of the allegations set forth in all paragraphs above.

160. A government body such as NASA may be held liable under 42 U.S.C. § 1983, when the execution of government policy or custom that may be fairly said to represent its official policy inflicts injury on a plaintiff. Section 1983 also allows liability for constitutional violations committed by government employees if the government body itself is responsible for causing constitutional deprivations. Monell liability can further rest on ratification by a final policymaker, or for damages caused by a failure to train employees that leads to the deprivation of constitutional rights (Monell v. Department of Social Services, 436 U.S. 658 (1978).

161.   Defendants have clearly violated this Plaintiff's well established rights under the First and Fourteenth Amendments to the United States Constitution.

162.   Defendants NASA, Hertz, Morrison and Mancinelli, slandered libeled and defamed Plaintiff and his property, JOC, and interfered with and suppressed his rights to free speech and a free press, and sought to prevent the continued publication of JOC by destroying its reputation.

163.   Defendant Hertz sought to discredit and to silence JOC by claiming that NASA has the right to approve articles published by JOC, and that because NASA did not approve and did not grant JOC authorization it did not have the right to publish and what it did publish therefore lacked legitimacy.

164.   NASA and Defendants Does 1-100 also suppressed this Plaintiff's rights to free speech and a free press by censoring, obscuring and adding layers of visual noise to all nighttime space-shuttle footage so as to prevent Plaintiff and the scientific community from observing, investigating, speaking about, and publishing information about unusual plasma-like specimens in the thermosphere.

165.   Defendants Morrison and Mancinelli used the organization The Search for Extraterrestrial Life, to interfere with, undermine, and suppress this Plaintiff's rights to free speech and a free press and his ability to conduct research or to collaborate with other scientists, and they did so by issuing false claims that specimens observed in the thermosphere and as captured by NASA space shuttle film footage were merely tricks of the camera and space junk and that no investigation should take place; which in itself, by barring investigations, suppressed and restrained speech and a free press.

166.   Defendants NASA, Bolden, Callas and Squyres also conspired to obstruct justice, to deny this Plaintiff his right to due process, and his rights to free speech and a free press, by faking evidence after Plaintiff had filed a complaint with this court regarding specimen Sol 3540 which had been

photographed on Mars. These Defendants faked this evidence to prevent Plaintiff and the scientific community from observing, investigating, speaking about, and to prevent the media fromn publishing information about specimen 3540 and other specimens on Mars which resemble colonies of microbial organisms.

167. Defendants have repeatedly interfered with and have sought to deny this Plaintiff his First and Fourteenth Amendment rights and have repeatedly engaged in actions whose purpose was to exert prior restraint on speech and the press.

168. NASA has failed to train its administrators and employees adequately with respect to First and Fourteenth Amendment rights, and has displayed hostility and a malicious deliberate indifference to the constitutional rights of this Plaintiff, the press, and the scientific community and has encouraged a policy of using threats, defamation, slander, and libel to discredit and silence competitors and those with opposing views including this Plaintiff.

169. On information and belief, NASA failed to supervise and discipline its administrators and employees for unlawfully interfering with the First and Fourteenth Amendment rights of this Plaintiff and his property, JOC.

170. On information and belief, NASA and all Defendants are surely aware there is absolutely no scientific evidence to support its claim that all life originated on Earth and that life originated on Earth multiple times, and they must know that these claims are based on the Jewish and Christian religious text Genesis 1. NASA and all Defendants are surely aware that for over 2,500 years the dominant science-based theories have instead proposed that life on Earth fell to Earth from space, and that in the last 200 years numerous scientists including Nobel Prize winners have concluded that life on Earth came from space and other planets and that it is and was impossible for life to form on Earth. Nevertheless, despite knowing there are alternative theories which are backed up by substantial evidence, NASA claims as established fact that all life originated on Earth and uses slander, defamation, libel, ridicule, and even threats of violence to limited the "marketplace of ideas" to a single idea which is based on religious beliefs, not science; and as such, these practices and policies are in violation of the First Amendment.

171. These unconstitutional policies, customs, and practices of NASA and NASA's demands for conformity of thought were the moving force behind the violation of constitutional rights by Defendants Bolden, Morrison, Mancinelli, Callas, Squyres, Hertz, and Does 1-100.

172. As a direct and proximate result of NASA's unconstitutional policies, customs and practices, Plaintiff's First and Fourteenth Amendment rights have been curtailed, resulting in significant

professional injury, financial loss, loss of reputation, as well as emotional pain and anguish. Plaintiff is thus entitled to a declaration that Defendants violated his First Amendment rights and that of JOC. Additionally, Plaintiff is entitled to damages in an amount to be determined by jury.

173.    The Defendants had a legal duty of care which is to not cause injury to the Plaintiff (Hoyen v, Manhattan Beach City School District (1978) 22 Cal.3d 508). According to California Civil Code, 3281. "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." According to California Civil Code 1708, "every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." According to California Civil Code 1714. (a) "every one is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person.

174.    Plaintiff is entitled to compensation for emotional distress or psychological injury as a result of Defendants' misconduct and noneconomic and general damages, including losses which naturally or necessarily result from Defendants' conduct. General damages include pain and suffering, loss of enjoyment of life, emotional distress, and mental anguish (see Bush v. Lucas, 462 U.S. 367 (1983).

## XIV.    PRAYER FOR INJUNCTIVE & DECLARATIVE RELIEF

175.    Plaintiff re-alleges and incorporates each and all of the paragraphs and allegations.

176.    WHEREFORE, Plaintiff respectfully request that the Court enter judgment against Defendants and provide Plaintiffs the following relief:

177.    A declaratory judgment that Defendants' use of defamation, slander, libel, and encouraged threats of violent in order to chill and restrain speech and the press, and violated the First and Fourteenth Amendments

178.    A declaratory judgment that Defendants' have been censoring and faking evidence so as to discredit competing theories on the origins of life, and that the censorship and faking of evidence violated the First and Fourteenth Amendments.

179.    A declaratory judgment that Defendant NASA has acted maliciously, has sought to restrain and chill speech and the press, and has unlawfully limited the marketplace of ideas to a single idea as to the origins of life.

180.     A declaratory judgment that Defendant NASA has unlawfully discredited and sought to suppress the only scientific, evidence based theory as to the origins of life as proposed and detailed by this Plaintiff and others; i.e. that life fell to Earth, that life must have come from space, that life arrived on this planet encased in meteors, asteroids, comets, and pieces of planet.

181.     A declaratory judgment that Defendant NASA has been promoting religion and not science and has been falsely claiming as established fact that all life originated on Earth, that Earth is the origin of life, that life formed on Earth multiple times, and that all of NASA's claims have no factual, evidentiary or scientific foundation, are refuted by overwhelming evidence, and are merely a restatement of Genesis 1 dressed in the language of science.

182.     Injunctive relief: Plaintiff respectfully requests that this Court order Defendants NASA and Charles Bolden to provide Plaintiff Dr. Rhawn Joseph, with complete copies of high resolution, uncensored, nighttime film footage from all space shuttle missions and from the International Space Station, and which must be free of "noise", static, "white noise", "alternating colors", or any other visual obstructions or interference.

183.     Injunctive relief: Plaintiff respectfully requests that this Court order Defendants NASA and Charles Bolden to immediately provide the Plaintiff with high resolution and in-focus pictures of specimen identified as Sol 3540 and which are free of visual noise, visual artifacts, or any other form of tampering.

184.     Injunctive relief: Plaintiff respectfully requests that this Court order Defendants NASA and Charles Bolden to immediately provide the Plaintiff with all photos which have been taken of the specimen identified in Sol 3540.

185.     Injunctive relief: Perform a public, scientific, and statutory duties which ought to be performed and which have not been performed, i.e. NASA and its rover team must take 100 high resolution close-up in-focus photos of the specimen identified in Sol 3540, at various angles, from all sides, and from above down into the "bowl" of the specimen, and under appropriate lighting conditions which minimize glare.

186.     Injunctive relief: 1) NASA shall place a full page ad, 2) in the top 100 newspapers in the U.S. based on subscription, 3) and on NASA's home page, 4) and which shall run for 30 days, 4) apologizing to this Plaintiff and to the Journal of Cosmology, and 5) admitting that NASA lied about, defamed, libeled, and slandered the Journal of Cosmology, and 6) that NASA engaged in these illegal acts to silence the Journal of Cosmology which NASA saw as a threat, and to punish the Journal of

Cosmology for its rigorous peer review process, for its popularity and growing influence, and for publishing evidence that life came from other planets and that there is life on Mars, and evidence of fossilized evidence of bacteria in a number of meteors.

187. Injunctive relief: 1) NASA shall place a full page ad, 2) in the top 100 newspapers in the U.S. based on subscription, 3) and which shall run for 30 days, 4) and on NASA's home page which shall run for 1 year, 5) in which NASA admits there is no evidence that life originated on Earth, 6) that NASA has been promoting religion masquerading as science, and 7) that the preponderance of evidence supports an extraterrestrial origin of life, as theorized by and as based on the evidence presented by Dr. Rhawn Joseph and others (to be named) as published in the Journal of Cosmology which NASA libeled, slandered, and defamed.

187. All other further relief to which Plaintiff may be entitled.

DATED: May 21, 2014                              Respectfully submitted

                                                 By: _____
                                                 Rhawn Joseph, Ph.D. / pro per

**PLAINTIFF'S PERSONAL DECLARATION**

Plaintiff Rhawn Joseph does hereby provide this personal declaration, and hereby declare that Plaintiff's Amended Complaint and the allegations and causes of actions therein, were "made on personal knowledge" and on admissible facts and information obtained by this Plaintiff and/or available in the public record, and affirms that Plaintiff, Rhawn Joseph, "is competent to testify to the matters stated therein."

I swear by penalty of perjury, by the laws of California and the United States government that the above is true and correct to the best of my knowledge and belief.

DATED: May 21, 2014

By: _____
Rhawn Joseph, Ph.D. / pro per

# EXHIBIT A

(NASA Film Footage of Specimens in the Thermosphere, 200 miles above the Planet,

on a DVD Marked "Exhibit A", Attached--)


# EXHIBIT B

(NASA Censors, Adds 4 Layers of Visual Noise to all Nighttime Space Shuttle Film Footage to Hide

Evidence of Specimens 200 miles above the Planet,

on a DVD Marked "Exhibit B", Attached--)



EXHIBIT A



EXHIBIT B

JOSEPH V NASA
Complaint

Rhawn Joseph
677 Elm St., San Jose, CA 95126
408-286-9833, DearDoctorJoseph@Gmail.com

**EXHIBIT C**

**(NASA's Official Before and After Photo 12 Martian Days Apart**

**Note Camera/Rover Has Not Been Moved During These 12 days**

**Note: Both Photos Have Been Cropped by NASA and the Specimen in the After**

**Photo Has Been De-Focused and Blurred by NASA)**



# EXHIBIT D

**(Before Photo Sol 3528, Enlarged by Plaintiff**

**Showing Specimen Was Present in Miniature.**

**Portion of Rover Visible to the Left)**



**EXHIBIT E**

**(Before Photo Sol 3528, Enlarged by Plaintiff**



## EXHIBIT F

### (After Photo Sol 3540, Enlarged by Plaintiff.

### This Photo Has Been De-Focused and the Specimen has been "photoshopped"

### by NASA to Obscure Fine Details



**EXHIBIT G**
(NASA's Artificially Colorized, High Resolution, In-Focus Photo of Rover Wheel Tracks.
Note Back, Forth, Side Ways Grinding of the Tracks To Deliberately Break Rocks.
These Rocks Were Broken Approximately 14 Days After Sol 3540 Was Discovered)



## EXHIBIT H
(NASA "Mystery Solved" Photo of Rover Wheel Tracks and Broken Rocks.
Note Back, Forth, Side Ways Grinding of the Tracks to Purposefully Break Rocks)



## Certificate of Service

I, the undersigned, am over the age of eighteen years and not a party to this case. I HEREBY CERTIFY that on this May 22, 2014, a true and correct copy of Rhawn Joseph's Second Amended Complaint was placed in an enveloped and mailed via certified mail (USPS) postage prepaid, to:

Civil-Process Clerk
United States Attorneys Office
150 Almaden Blvd, Suite 900
San Jose, CA 95113

James A. Scharf,
Assistant United States Attorney
150 Almaden Blvd, Suite 900
San Jose, CA 95113

Eric H. Holder, Jr.
U.S. Department of Justice
950 Pennsylvania Avenue, NW,
Washington DC 20530

Charles F. Bolden,
NASA Headquarters
300 E St SW,
Washington, DC 20546-0001

Paul Hertz
NASA Headquarters, Astrophysics Division,
Mail Suite 3U23,
Washington, DC 20546-0001

David Morrison
Solar System Exploration Research Institute
NASA Ames Research Center M/S: 17-1
Moffett Field, CA. 94035

Rocco Mancinelli
Mail Stop 239-4,
NASA Ames Research Center,
Moffett Field, CA 94035.

John Callas
Jet Propulsion Laboratory
Mars Exploration Rover Project
4800 Oak Grove Dr,
MS 264-870
Pasadena, CA 91109

Steven Squyres
Cornell University
428 Space Sciences Building
Ithaca, NY 14853

Plaintiff's 2nd Amended
Complaint

50

Rhawn Joseph
677 Elm St., San Jose, CA 95126
408-286-9833, DearDoctorJoseph@Gmail.com

## Certificate of Service

I, the undersigned, am over the age of eighteen years and not a party to this case. I HEREBY CERTIFY that on this May 22, 2014, a true and correct copy of Rhawn Joseph's Second Amended Complaint was placed in an enveloped and mailed via certified mail (USPS) postage prepaid, to:

Civil-Process Clerk
United States Attorneys Office
150 Almaden Blvd, Suite 900
San Jose, CA 95113

James A. Scharf,
Assistant United States Attorney
150 Almaden Blvd, Suite 900
San Jose, CA 95113

Eric H. Holder, Jr.
U.S. Department of Justice
950 Pennsylvania Avenue, NW,
Washington DC 20530

Charles F. Bolden,
NASA Headquarters
300 E St SW,
Washington, DC 20546-0001

Paul Hertz
NASA Headquarters, Astrophysics Division,
Mail Suite 3U23,
Washington, DC 20546-0001

David Morrison
Solar System Exploration Research Institute
NASA Ames Research Center M/S: 17-1
Moffett Field, CA. 94035

Rocco Mancinelli
Mail Stop 239-4,
NASA Ames Research Center,
Moffett Field, CA 94035.

RECEIVED
2014 MAY 22 P 4: 56
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

John Callas
Jet Propulsion Laboratory
Mars Exploration Rover Project
4800 Oak Grove Dr,
MS 264-870
Pasadena, CA 91109

Steven Squyres
Cornell University
428 Space Sciences Building
Ithaca, NY 14853